IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BERLANGA, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>EQUILON ENTERPRISES LLC, et al.,<br><br>Defendants. | Case No. 17-cv-00282-MMC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |

Before the Court is defendants Shell Pipeline Company LP, Equilon Enterprises LLC, CRI U.S. LP and CRI Catalyst Company LP's (collectively, "Shell") Motion to Dismiss Plaintiffs' Amended Complaint, filed June 26, 2017, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs David Berlanga ("Berlanga"), Brandon Ehresman ("Ehresman"), Charles Gaeth ("Gaeth"), Michael Gonzalez ("Gonzalez"), John Langlitz ("Langlitz") and Christopher Palacio ("Palacio") have filed opposition, to which Shell has replied. Thereafter, with leave of court, plaintiffs filed a surreply. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

Plaintiffs are six individuals who work as "operators at Shell's refining and distribution facilities, shipping and storage terminal facilities, and catalyst production plants" in California. (See First Amended Class Action Complaint ("FAC") ¶¶ 11.) Plaintiffs allege Berlanga works at the "Carson Terminal" (see FAC ¶ 38), Ehresman

---

[1] By order filed August 21, 2017, the Court took the matter under submission.

works at the "Criterion Catalyst Plant" (see FAC ¶ 39), and Gaeth, Gonzalez, Langlitz and Palacio work at the "Martinez Refinery" (see FAC ¶¶ 40-43). Plaintiffs allege they "are scheduled for and work 12-hour shifts, during which Shell uniformly requires them to remain on duty the entire shift." (See FAC ¶ 22.) In particular, according to plaintiffs, they "are required to remain attentive, carry radios, and be reachable at all times during their shifts" and are "required to remain in contact with supervisors and other employees working in their units throughout their shifts." (See FAC ¶ 23.) Further, plaintiffs allege, "Shell does not authorize or permit [p]laintiffs to take off-duty rest breaks for every four-hour work period or major fraction thereof" and "does not pay [p]laintiffs an extra hour of wages for each work day during which they are not provided the off-duty rest breaks." (See FAC ¶¶ 24, 26.)

Based on the above allegations, plaintiffs assert four Claims for Relief, all arising under state law and titled, respectively, "Failure to Authorize and Permit Rest Periods," "Failure to Furnish Accurate Wage Statements," "Private Attorneys General Act," and "Unfair Business Practice and Unfair Competition."

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

//

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

By the instant motion, Shell seeks, pursuant to Rule 12(b)(6), dismissal of all claims alleged in the FAC.

### A. All Claims: Complete Preemption Defense

Plaintiffs' claims, all of which, as noted, arise under state law, are based on the allegation that Shell has a "policy or practice of failing to authorize and permit [p]laintiffs . . . to take the rest periods to which they are entitled under California law." (See FAC ¶ 48; see also FAC ¶ 36 (alleging "all of [p]laintiffs' claims arise out of [Shell's] failure to authorize or permit rest periods").) Shell argues that, under the doctrine of complete preemption, plaintiffs' state law claims must be treated as federal claims.

"[W]here the preemptive force of a [federal] statute is so strong that it completely preempts an area of state law," a claim purportedly based on "a preempted state law is considered, from its inception, a federal claim." See Valles v. Ivy Hill Corp., 410 F.3d 1071, 1075 (9th Cir. 2005) (internal citations, quotations, and alteration omitted). The Labor Management Relations Act ("LMRA") includes 29 U.S.C. § 185(a), a federal statute that completely preempts state laws claims, specifically, claims "founded directly on rights created by collective-bargaining agreements ['CBAs'], and also claims substantially dependent on analysis of a [CBA]." See Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987) (internal quotation and citation omitted). Here, Shell argues, resolution of

3

plaintiffs' claims is substantially dependent on an analysis of the terms of the applicable CBAs. Plaintiffs, in response, argue that their claims are dependent solely on an analysis of state law, in particular, the California Labor Code.

Under the California Labor Code, "[a]n employer shall not require an employee to work during a . . . rest . . . period mandated pursuant to an . . . order of the Industrial Welfare Commission ("IWC"). See Cal. Lab. Code § 226.7(b). The IWC, in a regulation titled "Wage Order 1-2001," has ordered that "[e]very employer shall authorize and permit all employees to take rest periods," and that "[t]he authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." See 8 Cal. Code Regs. tit. 8, § 11010(12)(A). In Augustus v. ABM Security Services, Inc., 2 Cal. 5th 257 (2016), the California Supreme Court interpreted the above-quoted statute and regulation to require employers to provide "off-duty rest periods"; in other words, "during rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time." See id. at 269. Consistent therewith, the Supreme Court further held that an employer may not "require[ ] its employees to remain on call" during a rest period, for the reason that "one cannot square the practice of compelling employees to remain at the ready, tethered by time and policy to particular locations or communication devices, with the requirement to relieve employees of all work duties and employer control during 10-minute rest periods." See id.

The alleged Shell policy challenged by plaintiffs requires them to "remain attentive, carry radios, and be reachable at all times during their shifts" and to "remain in contact with supervisors and other employees working in their units throughout their shifts." (See FAC ¶ 23.) Although such alleged policy, if proven, would appear to be unlawful under, and arise under, state law, see Augustus, 2 Cal. 5th at 269, Shell, as discussed above, argues that plaintiffs' claims must be treated as federal claims arising under the LMRA. The Court next turns to that question and, as discussed below, finds Shell has failed to

//

show the challenged claims are preempted.[2]

### 1. Contractual Term "Uninterrupted"

Each CBA on which Shell's preemption argument is based defines the term "Rest Period" as follows: "'Rest Period' shall mean an uninterrupted period of ten (10) consecutive minutes, in accordance with California law or other legal obligations." (See Layne Decl. Ex. H ¶ 1(b).)[3] According to Shell, a dispute exists as to "whether 'uninterrupted' rest breaks is interpreted to mean 'off-duty,' or whether it was understood to allow the carrying of radios." (See Defs.' Reply at 5:21-22.) Shell contends such dispute must be resolved in order to determine whether any failure by Shell to comply with state law was "knowing and intentional." (See Defs.' Reply at 6:8-11). The Court disagrees.

As plaintiffs note, Shell's argument appears to pertain to the Second Claim for Relief, wherein plaintiffs allege Shell failed to provide plaintiffs with "an accurate itemized statement" of "gross wages earned," see Cal. Lab. Code § 226(a), which claim requires plaintiffs, in order to obtain monetary relief, to show such alleged failure was "knowing and intentional" as used in the Labor Code, see Cal. Lab. Code § 226(e)(1). Consequently, resolution of plaintiffs' claim that they did not receive rest periods is not substantially dependent on the meaning of the term "uninterrupted" as used in the CBA. In particular, even assuming the contractual term "uninterrupted" has a meaning different from the statutory definition, such difference would have no bearing on the question of

---

[2] In light thereof, the Court does not consider Shell's argument that any LMRA claims must be dismissed for failure to comply with the grievance procedures set forth in the CBAs.

[3] Shell has submitted both expired and current supplemental agreements to the CBAs applicable to the facilities at which plaintiffs work. Shell's unopposed request for judicial notice of the CBAs is hereby GRANTED. See Densmore v. Mission Linen Supply, 164 F. Supp. 3d 1180, 1187 (E.D. Cal. 2016) (holding court "may take judicial notice of a CBA in evaluating a motion to dismiss"). As the language in each CBA on which Shell relies is identical, the Court, when citing a provision in a CBA, will cite only to the language in the supplement to the CBA currently applicable to the Martinez Refinery and the Carson Terminal. (See Layne Decl. Ex. H; see also id. Ex. A, article 23.)

Shell's state of mind under the Labor Code, as California's rest period provision is a "state-mandated minimum labor standard" that parties to a CBA cannot "waive," see Cicairos v. Summit Logistics, Inc., 133 Cal. App. 4th 949, 959-60 (2005); cf. Valles, 410 F.3d at 1081 (holding "the right to meal breaks [under California law] is a generally applicable labor standard that is not subject to waiver by agreement"), and the LMRA "does not grant the parties to a [CBA] the ability to contract for what is illegal under state law," see Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 212 (1985).

### 2. Notification/Reporting Provisions

Each CBA includes, in a section titled "Rest Period," the following three provisions on which Shell relies:

> Covered Employees are expected to notify their supervisor in advance, if possible, if the nature of the work and a business need will cause a situation where a Rest Period is not available for an employee.

(See Layne Decl. Ex. H ¶ 5(b).)

> If advance supervisory approval to miss a Rest Period is not obtained, a Rest Period is available, and no Rest Period is taken, it will be presumed that not taking the Rest Period was the Covered Employee's voluntary choice.

(See id. Ex. H ¶ 5(c).)

> Covered Employees will record that they were authorized and permitted to take Rest Periods as provided by California law (unless otherwise indicated) on their shift turnover report (or other document as determined by the Company).

(See id. Ex. H ¶ 5(e).)

Although Shell argues the above-referenced provisions "must be examined" (see Defs.' Mot. at 1-2) and "interpreted to determine what type of notice and reporting are required" (see Defs.' Reply at 6:2-3), Shell fails to identify how any such provision could have any bearing on plaintiffs' state law claims, none of which challenges any of the above-required procedures or otherwise is dependent on an analysis of those contractual provisions.

//

//

### 3. Grievance Procedures/Negotiations In Light of Change in Law

Each CBA provides that an employee who "has a dispute regarding any alleged failure to follow [its] terms" must "first notify the Human Resources department in writing," and, if dissatisfied with the result, "invoke the [g]rievance procedure." (See Layne Decl. Ex. H ¶ 7(d).) Additionally, each CBA provides that "[t]he Union and the Company agree to meet and negotiate any changes to [the CBA] if there are any changes or controlling clarifications in state or federal law." (See id. Ex. H ¶ 7(e).)

Shell contends "[r]esolution of the rest break claim in this case would require an analysis of the grievance process provided in the [CBAs] and interpretation of the CBAs to determine whether those procedures were exhausted." (See Defs.' Mot. at 13:25-27.) Shell fails, however, to show the above-referenced provisions have any bearing on plaintiffs' state law claims, none of which requires exhaustion of contractual remedies as a prerequisite to filing suit or otherwise appears to be in any manner dependent on an analysis of the grievance procedure.

### B. Arguments Specific to Individual Claims

The Court next considers Shell's additional arguments, which pertain to specific claims.

#### 1. Second Claim for Relief: "Failure to Furnish Accurate Wage Statements"[4]

Where an employer fails to provide an employee a rest period, "the employer shall pay the employee one additional hour of pay at the employer's regular rate of compensation for each workday that the . . . rest . . . period is not provided," see Cal. Lab. Code § 226.7(c); the "additional hour of pay" is commonly referred to as "premium pay," see Augustus, 2 Cal. 5th at 272.

In the Second Claim for Relief, plaintiffs allege Shell "knowingly and intentionally failed to furnish [plaintiffs] with complete and accurate itemized statements," in that the

---

[4]Shell does not make an argument specific to the First Claim for Relief, titled "Failure to Authorize and Permit Rest Period."

7

"wage statements" Shell provided to plaintiffs did not "includ[e] the required premium wages earned for missed rest periods." (See FAC ¶ 52.) Plaintiffs seek relief under § 226 of the California Labor Code, which requires an employer to provide each employee "an accurate itemized statement in writing" that includes, inter alia, "gross wages earned." See Cal. Lab. Code § 226(a).

Plaintiffs' theory is that the statements were inaccurate in that the statements did not include the "wages" to which plaintiffs state they were entitled for having missed rest periods. See id. Shell argues the claim is subject to dismissal for the reason that, according to Shell, "nonpayment of rest break premiums cannot be the basis for a wage statement claim" (see Defs.' Mot. at 17:15-16), i.e., that payments due to employees who are not provided rest periods are not, under § 226(a), "wages earned," and thus need not be included on a wage statement. The California Supreme Court has not addressed the precise issue presented here, and district courts that have done so have reached differing conclusions. Compare Azpeitia v. Tesoro Refining & Marketing Co., 2017 WL 3115168, at *8 (N.D. Cal. July 21, 2017) (denying motion to dismiss where § 226 claim predicated on failure to include payments for missed rest periods; holding "payments required by section 226.7 should be considered wages"), with Nguyen v. Baxter Healthcare Corp., 2011 WL 6018284, at *8 (C.D. Cal. November 28, 2011) (holding payments for "missed meal breaks" need not be "included in an employee's wage statement"; finding such payments are "properly considered liquidated damages, not wages earned").

The Court, having reviewed the cases cited by the parties, agrees with those district courts that have found payments due employees for missed rest periods are properly characterized as wages, and, thus, that a claim under § 226 can be based on an alleged failure to include on a wage statement payments due for missed rest periods. In particular, as those district courts have observed, see, e.g., Brewer v. General Nutrition Corp., 2015 WL 5072039, at *17 (N.D. Cal. August 27, 2015), the California Supreme Court, in Murphy v. Kenneth Cole Productions, Inc., 40 Cal. 4th 1094 (2007), has held, in

8

the context of determining the applicable statute of limitations for claims alleging meal and rest period violations, "section 226.7 payments are a form of wages." See id. at 1102, 1114. The Court finds the California Supreme Court, having characterized payments for missed rest periods to be wages for one purpose under the Labor Code, would not define those payments to be something other than wages for other purposes under the Labor Code, see, e.g., Azpeitia, 2017 WL 3115168, at *8 (finding unpersuasive defendant's argument that payments due employees for missed rest periods "should be considered 'wages' in one context but not the other"); see also Dimidowich v. Bell & Howell, 803 F.2d 1473, 1482 (9th Cir. 1986) (holding "[w]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it").

District courts that have found to the contrary rely, as does Shell, on the California Supreme Court's decision in Kirby v. Immoos Fire Protection, 53 Cal. 4th 1244 (2012). In Kirby, the California Supreme Court interpreted § 218.5 of the Labor Code, which provides that a party who prevails in an "action brought for the nonpayment of wages" is entitled to attorney's fees, see Cal. Lab. Code § 218.5(a), and held that a party who prevails on a § 226.7 claim is not entitled to fees under § 218.5. In so holding, the Supreme Court based its decision on the language of § 218.5. In particular, the Kirby court held, the words "action brought for," as used in § 218.5, mean "action brought on account of." See Kirby, 53 Cal. 4th at 1256. Reasoning that an action brought under § 226.7 is brought "on account of" the employer's failure to provide a meal or rest break, not on account of nonpayment of the "remedy" provided for such violation, namely, an additional hour of pay, the Kirby court held the California "Legislature did not intend meal or rest break claims to be subject to § 218.5's two-way fee-shifting provision." See id. at 1258. As the Supreme Court explained, however, its interpretation of § 218.5 was "not at odds with [its] decision in Murphy," nor did it otherwise suggest that such remedy was not a wage. See id. at 1257 (quoting Cal. Lab. Code § 226.7(c)).

Accordingly, Shell has not shown the Second Claim for Relief is subject to

9

dismissal.

**2. Third Claim for Relief: "Private Attorneys General Act"**

In the Third Claim for Relief, plaintiffs seek to recover "civil penalties" for which plaintiffs allege Shell is liable as a result of failing to provide rest periods. (See FAC ¶¶ 57-58.)

Under the Private Attorneys General Act ("PAGA"), an "aggrieved employee" may file a civil action to recover from an employer a "civil penalty" that may be "assessed and collected" by the state. See Cal. Lab. Code § 2699(a). To bring a PAGA claim, the plaintiff must exhaust the administrative procedures set forth in the Labor Code, specifically, by giving "written notice by online filing with the Labor and Workforce Development Agency ['LWDA'] and by certified notice to the employer of the specific provisions of [the Labor Code] alleged to have been violated," see Cal. Lab. Code § 2699.3(a)(1)(A), as well as by paying to the LWDA a "filing fee" of $75.00, see Cal. Lab. Code § 2699.3(a)(1)(B). Thereafter, the employee may "commence a civil action pursuant to [PAGA]" either upon receipt of a "notice" from the LWDA that "it does not intend to investigate the alleged violation" or, "if no notice is provided within 65 calendar days of the postmark date of the [employee's] notice." See Cal. Lab. Code § 2699.3(a)(2)(A).[5]

Here, in their initial complaint, plaintiffs alleged they were "in the process of exhausting their administrative remedies" and would "amend" the complaint "[w]hen [p]laintiffs' administrative remedies [had been] exhausted." (See Compl. ¶ 54.) In the FAC, plaintiffs allege they "have exhausted their administrative remedies," specifically, that they provided the requisite notice to the LWDA and Shell on January 19, 2017, that they paid the filing fee to the LWDA, and that "[t]he LWDA did not provide notice to

---

[5]Where the LWDA gives timely notice of its intent to investigate, the employee may file a lawsuit only if the LWDA, within a specified period of time, does not issue a "citation" to the employer or "fails to provide timely or any notification" of the results of its investigation. See Cal. Lab. Code § 2699.3(a)(2)(B).

10

[p]laintiffs that it intend[ed] to investigate the alleged violations within 65 calendar days." (See FAC ¶ 59.)

Shell argues the PAGA claim is subject to dismissal for the asserted reason that a plaintiff who has not exhausted his/her administrative remedies prior to the filing of the initial complaint cannot later amend the complaint to allege exhaustion. The authority on which Shell relies, however, Caliber Bodyworks, Inc. v. Superior Court, 134 Cal. App. 4th 365 (2005), expressly contemplates the type of amendment made here by plaintiffs. In Caliber, the Court of Appeal found the trial court erred in not dismissing a PAGA claim, given that the plaintiffs therein had "failed to plead compliance with [PAGA's] pre-filing notice and exhaustion requirements." See id. at 383. As the Court of Appeal further observed, however, "plaintiffs certainly may follow the administrative procedures in [PAGA], and, should the LWDA choose not to investigate or cite [the employer] based on the alleged violations, then request leave to amend the first amended complaint to seek civil penalties." See id. at 383 n.18.

Consistent therewith, district courts that have considered the issue have found a plaintiff may amend a PAGA claim to allege subsequent compliance with the exhaustion requirements. See, e.g., Donnelly v. Sky Chiefs, Inc., 2016 WL 9083158, at *2 (N.D. Cal. October 25, 2016) (granting plaintiff leave to amend PAGA claim to allege exhaustion; observing "California courts have not held that the failure to exhaust administrative remedies before initiating PAGA actions must lead to dismissal of the PAGA claim"); Garnett v. ADT LLC, 139 F. Supp. 3d 1121, 1128 (E.D. Cal. 2015) (holding, where plaintiff filed initial PAGA complaint prior to exhausting administrative remedies, plaintiff "cured the defects" by alleging in amended complaint she had exhausted such remedies); Stagner v. Luxottica Retail North America, Inc., 2011 WL 3667502, at *7 (N.D. Cal. August 22, 2011) (dismissing PAGA claim where plaintiff filed suit prior to exhausting administrative remedies, and affording plaintiff leave to amend to plead subsequent exhaustion).

Accordingly, Shell has not shown the Third Claim for Relief is subject to dismissal.

11

**3. Fourth Claim for Relief: "Unfair Business Practice and Unfair Competition"**

In the Fourth Claim for Relief, plaintiffs allege Shell, in violation of § 17200 of the Business & Professions Code, engaged in "unlawful and unfair business practices" by failing to provide rest periods and accurate wage statements. (See FAC ¶¶ 65, 66.) As relief, plaintiffs seek restitution in the form of "lost wages" (see FAC ¶ 70), as well as an injunction prohibiting Shell "from engaging in the unlawful business practices complained of [in the FAC]" (see FAC, prayer ¶ 9).

Where a defendant has engaged in "unfair competition" in violation of § 17200, a trial court may, in addition to enjoining such "unfair competition," issue "such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." See Cal. Bus. & Prof. Code § 17203.

Citing Parson v. Golden State FC, LLC, 2016 WL 1734010 (N.D. Cal. May 2, 2016), Shell argues that the payments due employees for missed rest periods cannot be recovered in a § 17200 claim, and, consequently, that the claim should be dismissed to the extent plaintiffs seek restitution. Although Parson did hold that an employee does not have an "ownership interest" in the additional hour of pay owed for a missed rest period, see Parson, 2016 WL 1734010, at *6 (internal quotation and citation omitted), the district judge who authored that decision subsequently considered the same issue in Azpeitia, and held to the contrary. See Azpeitia, 2017 WL 3115168, at *9-10.

The Court agrees with the reasoning in Azpeitia, which, as have "numerous district courts," see id. at *9, relied on Cortez v. Purolator Air Filtration Prod. Co., 23 Cal. 4th 163 (2000), in which the California Supreme Court determined "unlawfully withheld wages are property of the employee within the contemplation of [§ 17203]," see Azpeitia, 2017 WL 3115168, at *8 (quoting Cortez), and, consequently, an "order that earned wages be paid is therefore a restitutionary remedy authorized by [§ 17203]," see Cortez, 23 Cal. 4th at 178; see also Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1149 (2003) (acknowledging "unpaid wages" can be "recovered as restitution" under § 17203; citing

12

Cortez).

Accordingly, Shell has not shown the Fourth Claim for Relief is subject to dismissal.

### 4. Prayer for Attorney Fees

In their prayer for relief, plaintiffs seek "an award of attorney's fees and costs incurred in the filing and prosecution of this action, as provided by Labor Code sections 226(e), 226(h) and 2699, California Code of Civil Procedure section 1021.5 and any other appropriate statutes." (See FAC, prayer ¶ 13.)

In support of its argument that plaintiff's claim for attorney's fee should be dismissed, Shell again relies on Kirby, in which, as discussed above, the California Supreme Court held that a party prevailing under § 226.7 is not entitled to an award of attorney's fees under § 218.5. See Kirby, 53 Cal. 4th at 1257-59 (holding claim brought under § 226.7 is "action brought for non-provision of meal or rest breaks," and not, as is required to seek fees under § 218.5, an "action brought for non-payment of wages").

As plaintiffs point out, however, they do not seek an award of fees under § 218.5, and Shell has not shown the statutes on which plaintiffs do rely are inapplicable.

Accordingly, Shell has not shown plaintiffs' prayer for attorneys' fees is subject to dismissal.

## CONCLUSION

For the reasons stated above, Shell Defendants' motion to dismiss is hereby DENIED.

**IT IS SO ORDERED.**

Dated: August 31, 2017

MAXINE M. CHESNEY
United States District Judge

13