1  JAY SMITH (CA Bar No. 166105)
   (Email: js@gslaw.org)
2  JOSHUA F. YOUNG (CA Bar No. 232995)
   (Email: jyoung@gslaw.org)
3  GILBERT & SACKMAN
   A LAW CORPORATION
4  3699 Wilshire Boulevard, Suite 1200
   Los Angeles, California 90010
5  Telephone: (323) 938-3000
   Fax: (323) 937-9139
6
   RANDY RENICK (CA Bar No. 179652)
7  (Email: rrr@hadsellstormer.com)
   CORNELIA DAI (CA Bar No. 207435)
8  (Email: cdai@hadsellstormer.com)
   HADSELL STORMER & RENICK, LLP
9  128 North Fair Oaks Avenue, Suite 204
   Pasadena, California 91103-3645
10 Telephone: (626) 585-9600
   Fax: (626) 577-7079
11
   Attorneys for Plaintiffs
12 [Additional Counsel Listed on Next Page]

13                    **UNITED STATES DISTRICT COURT**

14                   **NORTHERN DISTRICT OF CALIFORNIA**

15  DAVID BERLANGA, BRANDON              Case No. 17-cv-00282-MMC
    EHRESMAN, CHARLES GAETH,
16  MICHAEL GONZALEZ, JOHN               **CLASS ACTION**
    LANGLITZ, and CHRISTOPHER
17  PALACIO, individually and on behalf of all   **JOINT NOTICE OF MOTION AND MOTION**
    similarly situated current and former        **FOR PRELIMINARY APPROVAL OF**
18  employees,                                    **SETTLEMENT AGREEMENT;**
                                                  **DECLARATIONS OF COUNSEL; AND**
19                         Plaintiffs,            **EXHIBITS**

20  v.                                   DATE:        September 14, 2018
                                         TIME:        9:00 a.m.
21  EQUILON ENTERPRISES LLC dba          PLACE:       San Francisco Courthouse,
    SHELL OIL PRODUCTS US, CRI U.S. LP,               Courtroom 7, 19th Floor
22  CRI CATALYST COMPANY LP, and
    SHELL PIPELINE COMPANY LP, and       Honorable Maxine M. Chesney
23  DOES 1 through 10, inclusive,
                              .
24

25

26

27

28

GARY T. LAFAYETTE (CA Bar No. 88666)
(Email: glafayette@lkclaw.com)
BARBARA L. LYONS (CA Bar No. 173548)
(Email: blyons@lkclaw.com)
LAFAYETTE & KUMAGAI LLP
1300 Clay Street, Ste. 810
Oakland, CA 94612
Telephone: (415) 357-4600
Fax: (415) 357-4605
Attorneys for Defendants

1

PLEASE TAKE NOTICE that on September 14, 2018, at 9:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 7, 19th Floor of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs David Berlanga, Brandon Ehresman, Charles Gaeth, Michael Gonzalez, John Langlitz, and Christopher Palacio, individually and on behalf of all similarly situated current and former employees (collectively "Plaintiffs"), and Defendants Equilon Enterprises LLC dba Shell Oil Products US, CRI U.S. LP, CRI Catalyst Company LP, and Shell Pipeline Company LP ("Defendants") (collectively, the "Parties"), will and hereby move this Court for entry of the joint proposed order filed concurrently herewith:

1.    Preliminarily approving the class action settlement for $7,750,000;

2.    Preliminarily and conditionally certifying the Class (as defined herein) as a Federal Rules of Civil Procedure, Rule 23 settlement class;

3.    Preliminarily appointing Plaintiffs David Berlanga, Brandon Ehresman, Charles Gaeth, Michael Gonzalez, John Langlitz, and Christopher Palacio as Class Representatives for purposes of settlement;

4.    Preliminarily appointing Hadsell Stormer & Renick, LLP and Gilbert & Sackman, A Law Corporation, as Class Counsel for purposes of settlement;

5.    Preliminarily approving the application for payment to Class Counsel of reasonable attorneys' fees of up to $1,937,500 (25% of the common fund) and reasonable costs up to $25,000;

6.    Preliminarily approving the payment of an "incentive award" in the amount of $7,500 to each of the six Class Representatives;

7.    Approving as to form and content the Proposed Notice of Class Action Settlement (the "Notice of Settlement");

8.    Directing that the Notice of Settlement be mailed to the Class members; and

9.    Scheduling a fairness hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable, and adequate as to the members of the Class.

This motion is brought pursuant to Federal Rule of Civil Procedure 23 on the grounds that the Settlement is fair, reasonable, and adequate, and that all requirements for class certification have been met.

1    This motion is based upon this Notice, the Memorandum of Points and Authorities submitted

2  herewith, the Declarations of Randy Renick and Joshua Young and exhibits thereto filed herewith, the

3  other records, pleadings and papers filed in this action, and upon such other documentary and oral

4  evidence or argument as may be presented to the Court at the hearing on this motion.

5

6  DATED:  August 10, 2018          Respectfully submitted,

7                              LAFAYETTE & KUMAGAI LLP

8                              */s/ Gary T. Lafayette*

9                              Gary T. Lafayette
                               *Attorneys for Defendants Equilon Enterprises LLC dba*
10                             *Shell Oil Products US, CRI U.S. LP, CRI Catalyst*
                               *Company LP, and Shell Pipeline Company LP*

11                             HADSELL STORMER & RENICK, LLP

12

13                             */s/ Randy Renick*

14                             Randy Renick
                               *Attorneys for Plaintiffs David Berlanga, Brandon*
15                             *Ehresman, Charles Gaeth, Michael Gonzalez, John*
                               *Langlitz, and Christopher Palacio*

16

17                             GILBERT & SACKMAN
                               A LAW CORPORATION

18

19                             */s/ Josh Young*

20                             Josh Young
                               *Attorneys for Plaintiffs David Berlanga, Brandon*
21                             *Ehresman, Charles Gaeth, Michael Gonzalez, John*
                               *Langlitz, and Christopher Palacio*

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ................................................................................................1

II. STATEMENT OF FACTS ..................................................................................2

    A.  Procedural Background.............................................................................2

    B.  Pertinent Factual Background ..................................................................3

    C.  The Parties ...............................................................................................5

        1.  Class Representatives.....................................................................5

        2.  Defendants .....................................................................................6

    D.  Discovery and Investigation Conducted by Plaintiffs .............................7

    E.  Summary of Settlement Terms and Anticipated Schedule.......................7

        1.  Class Certification.........................................................................7

        2.  Total Settlement Fund ...................................................................8

        3.  Payment of Standard Claims.........................................................8

        4.  Additional Compensation for Active Litigants ............................8

        5.  Attorney's Fees and Costs ............................................................9

        6.  Payment of PAGA Claims.............................................................9

        7.  Administration of Claims..............................................................9

        8.  Notice to the Class ........................................................................9

        9.  Proposed Schedule ......................................................................10

III. THE PROPOSED CLASS SETTLEMENT SATISFIES ALL OF THE
REQUIREMENTS FOR PRELIMINARY APPROVAL .................................11

    A.  The Proposed Settlement Falls Within the Range of Possible Approval ..............12

    B.  The Proposed Class Settlement is the Product of Serious, Informed, Non-
Collusive, and Good-Faith Negotiations................................................14

    C.  The Settlement Does Not Offer Preferential Treatment to the Class
Representatives or Other Members of the Class.....................................14

    D.  The Settlement Agreement Has No Obvious Deficiencies ....................16

i

IV.    CONDITIONAL CLASS CERTIFICATION IS APPROPRIATE ...................................17

     A.    The Proposed Class is so Numerous that Joinder of All Members is

          Impracticable.............................................................................................17

     B.    There are Questions of Law and Fact Common to the Class................................18

     C.    The Claims Alleged by the Named Plaintiffs are Typical of the Claims Which

          Could be Alleged by any Member of the Class ....................................................18

     D.    The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the

          Class.......................................................................................................................19

     E.    Common Questions of Law and Fact Predominate and a Class Action is Superior19

          1.      Common Issues Predominate.....................................................................19

          2.      A Class Action is the Superior Method of Adjudication............................20

V.    NOTICE TO CLASS OF FINAL APPROVAL HEARING ..............................................20

     A.    The Proposed Settlement Notice Contains All of the Required Components .......21

     B.    The Method of Notice is Appropriate ..................................................................21

VI.    CONCLUSION..............................................................................................................22

1

### <u>TABLE OF AUTHORITIES</u>

**Page(s)**

2

**Cases**

3

*Angell v. City of Oakland, No. 13-cv-00190 NC,*

4

    2015 U.S. Dist. LEXIS 1037 (N.D. Cal. Jan. 5, 2015) ....................................................... 12

5

*Augustus v. ABM Securities Services, Inc.,*
    2 Cal. 5th 257 (2016) .........................................................................................*passim*

6

7

*Bellinghausen v. Tractor Supply Co.,*
    306 F.R.D. 245 (N.D. Cal. Mar. 19, 2015) ....................................................... 15

8

*Benton v. Telecom Network Specialists, Inc.,*

9

    220 Cal. App. 4th 701 (2013) ............................................................................. 20

10

*Bradley v. Networkers Int'l, LLC,*
    211 Cal. App. 4th 1129 (2012) ............................................................................. 20

11

*Brinker Restaurant Corp. v. Superior Court,*

12

    53 Cal.4th 1004 (2012) ......................................................................................... 20

13

*Buzas v. Phillips 66 Company,*
    Case No. 4:17-cv-00163-YGR (March 6, 2018), Dkt. #47 ................................. 16

14

15

*Chu v. Wells Fargo Invs., LLC,*
    Nos. C 05-4526 MHP, C 06-7924 MHP,
    2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 16, 2011) ............................... 15

16

17

*Churchill Vill., L.L.C. v. GE,*
    361 F.3d 566 (9th Cir. 2004) ......................................................................... 11, 21

18

*In re Consumer Privacy Cases,*

19

    175 Cal. App. 4th 545 (2009) ............................................................................. 13

20

*Covillo v. Specialty's Café,*

21

    No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837 (N.D. Cal. Mar. 6, 2014) ......................... 15

22

*Craft v. City of San Bernardino,*
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................................. 14

23

24

*Dennis v. Kellogg Co.,*
    697 F.3d 858 (9th Cir. 2012) ............................................................................. 16

25

*Dyer v. Wells Fargo Bank, N.A.,*

26

    303 F.R.D. 326 (N.D. Cal. 2014)....................................................................... 14

27

28

# TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Edwards v. The First Am. Corp.*,
    798 F.3d 1172 (9th Cir. 2015) ................................................................................ 19

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ................................................................................. 18

*Gardner, et al. v. Shell Oil Co., et al.*,
    Case No. 4:09-cv-5876-CW (N.D. Cal.) .................................................................... 2

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) ................................................................... 11, 12, 21

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ................................................................................ 18

*Harris v. Vector Mktg. Corp.*,
    No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) .................... 12, 15

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*,
    654 F.3d 935 (9th Cir. 2011) ................................................................................ 13

*Landre v. Shell Oil Co., et al.*,
    Case No. 10-cv-05906 GHK (C.D. Cal.) ...................................................................... 2

*Lubin v. Wackenhut Corp.*,
    5 Cal. App. 5th 926, 957 (2016) ............................................................................. 20

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................................ 19

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................ 12

*Noll v. eBay, Inc.*,
    309 F.R.D. 593 (N.D. Cal. 2015) ............................................................................ 12

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................................................ 12

*In re Optical Disk Drive Prods. Antitrust Litig.*,
    No. 3:10-md-2143 RS, 2016 U.S. Dist. LEXIS 175515 (N.D. Cal. Dec. 19, 2016) ................... 11

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*,
    779 F.3d 934 (9th Cir. 2015) ............................................................................ 13, 15

# TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................. 13, 15

*Sandoval v. Roadlink United States Pac., Inc.*,
No. EDCV 10-00973 ........................................................................................ 19

*Slaven v. BP America, Inc.*,
190 F.R.D. 649 (C.D. Cal. 2000) ........................................................................ 18

*Spann v. J.C. Penney Corp.*,
314 F.R.D. 312 (C.D. Cal. 2016) ........................................................................ 17

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ............................................................................ 14

**Statutes**

Cal. Bus. and Prof. Code § 17201 .......................................................................... 2, 6

Cal. Labor Code § 18 ...................................................................................................... 6

Cal. Labor Code § 226 .................................................................................................... 3

California Private Attorneys General Act .............................................................. 2, 3, 9

28 U.S.C. § 1715 .............................................................................................................. 17

29 U.S.C. § 185 ................................................................................................................. 3

**Rules**

Federal Rule of Civil Procedure 23 .................................................................... *passim*

**Wage Orders**

IWC Wage Order No. 1-2001 ........................................................................................ 4

IWC Wage Order No. 4-2001 ........................................................................................ 4

## I.   **INTRODUCTION**

Plaintiffs David Berlanga, Brandon Ehresman, Charles Gaeth, Michael Gonzalez, John Langlitz, and Christopher Palacio ("Named Plaintiffs") and Defendants Equilon Enterprises LLC dba Shell Oil Products US, CRI U.S. LP, CRI Catalyst Company LP, and Shell Pipeline Company LP, ("Defendants") seek preliminary approval of the proposed class action settlement ("Settlement"). Attached as Exhibit 1 to the Declaration of Randy Renick filed concurrently herewith is a true and correct copy of the Joint Stipulation of Class Action Settlement and Release.

Plaintiffs further seek conditional certification for purposes of settlement of the following class:

Current and former employees of any Defendant or any affiliate of a Defendant who worked as Operators at one or more of the following facilities:

(a)   Shell Pipeline Company LP's terminal facility in Carson, California (the "Carson Terminal facility"),

(b)   Equilon Enterprises LLC dba Shell Oil Products US's oil refinery in Martinez, California (the "Martinez Refinery");

(c)   CRI Catalyst Company LP's catalyst production facilities in Martinez and Pittsburg, California ("Criterion Catalyst plants"),

during the period beginning January 19, 2013 and ending the earlier of: (a) the date of any Division of Labor Standards Enforcement ("DLSE") exemption from the California Supreme Court's *Augustus* decision permitting Defendants to require refinery and/or catalyst plant operators to maintain radios during rest breaks;[1] or (b) the date of Preliminary Approval.

Subject to final approval of this Court, the parties have agreed to settle this action on an all-cash, non-reversionary basis for $7,750,000.  Before settlement, Plaintiffs conducted extensive investigation of Defendants' wage and hour practices at their four California petroleum and chemical

[1] *Augustus* refers to the California Supreme Court's decision in *Augustus v. ABM Securities Services, Inc.*, 2 Cal. 5th 257, 260 (2016).

products facilities, particularly in regard to the provision of rest breaks.[2]  The investigation included interviews of Operators at each of Defendants' California facilities and review of relevant documents, including workplace manuals, emergency procedures, rules and employee handbooks.  In addition, Defendants provided, and Plaintiffs reviewed, Defendants' payroll data, which included the number of shifts worked by each putative Class Member from the beginning of the Class Period and the applicable base hourly wages.  This discovery allowed Plaintiffs to thoroughly evaluate liability and to estimate damages, and provided a sufficient basis upon which to negotiate a settlement.  The resolution was the result of arms-length negotiations and a full-day mediation session with Barry Winograd, a highly skilled and experienced mediator.

Overall, the Settlement is an excellent result for the Class in light of all the relevant circumstances.  Accordingly, the parties respectfully request that the Court grant preliminary approval of the Settlement and enter the proposed order filed concurrently herewith.

## II.     STATEMENT OF FACTS

### A.     Procedural Background

On January 19, 2017, Plaintiffs filed their complaint against Defendants in *David Berlanga, et al., v. Equilon Enterprises LLC dba Shell Oil Products US,* Case No. 4:17-cv-00282, in the Northern District of California (the "Complaint").   The Complaint alleged the following causes of action: (1) Failure to authorize and permit duty free rest periods; (2) failure to furnish accurate wage statements; (3) penalties under the California Private Attorneys General Act; and (4) violation of the Unfair Competition Law, Business & Professions Code §17200.  Plaintiffs sought unpaid wages, statutory and civil penalties, restitution, attorneys' fees and costs, interest, and injunctive and declaratory relief for

---

[2] In 2009, Gilbert & Sackman filed suit on behalf of a class of Operators alleging that they had been denied off-duty meal periods at Shell's Martinez Refinery, *Gardner, et al. v. Shell Oil Co., et al*., Case No. 4:09-cv-5876-CW (N.D. Cal.).  Gilbert & Sackman also filed a companion case, *Landre v. Shell Oil Co., et al.* , Case No. 10-cv-05906 GHK (C.D. Cal.), which covered employees at Shell's Carson Terminal facility and Shell's former refinery in Wilmington, California. U.S. District Judge Claudia Wilken certified the class action in *Gardner* on April 21, 2011, the parties reached a settled soon thereafter, and final approval of the class action settlement was entered on October 1, 2012. During the pendency of these lawsuits, Gilbert & Sackman conducted extensive discovery, including multiple sets of written discovery and depositions of 16 witnesses, and became familiar with the working conditions at Shell's facilities at issue in this case. Young Decl. ¶ 9.

the time period from January 19, 2013 to the present.  Declaration of Randy Renick ("Renick Decl.") at ¶3.

Plaintiffs filed a First Amended Class Action Complaint for Damages, Restitution, and Injunctive Relief on May 19, 2017. Defendants filed a motion to dismiss the amended complaint, primarily arguing that Plaintiffs' claim under California Labor Code §226.7 is preempted by Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. They further asserted that the California Labor Code 226 and Unfair Competition Law claims fail on the basis that rest break premiums are not wages, and that Plaintiffs' Private Attorneys General Act ("PAGA") claim cannot stand for failure to comply with administrative prerequisites.  Lastly, they claimed that Plaintiffs could not recover attorneys' fees for claims based on rest break violations.  On August 31, 2017, this Court denied the motion to dismiss in its entirety. *Id*. at ¶ 4; Dkt. 41.

Both prior and subsequent to the filing of the complaint, Plaintiffs conducted a diligent investigation of Defendants' wage and hour practices with regard to rest breaks so as to evaluate liability and damages. In addition, Plaintiffs reviewed extensive payroll data which allowed Plaintiffs to calculate the estimated total amount of damages for which Defendants would be liable were Plaintiffs successful in their efforts to certify the class and prevail at trial.  *Id*. at ¶ 6.

On April 19, 2018, the parties participated in mediation with Barry Winograd in Oakland, California, and were able to reach a settlement of all claims.  The Settlement was ultimately reduced to a written Joint Stipulation of Class Action Settlement and Release (the "Settlement Agreement"), which has been executed by all parties.  Renick Decl., Exh. "1," at ¶ 4

### B.    Pertinent Factual Background

Each Defendant owns and/or operates one of the following facilities in California: (a) a fuel distribution facility in Carson (the "Carson Terminal facility"), (b) a refinery in Martinez, California (the "Martinez Refinery"), and (c) two catalyst production facilities in Martinez and Pittsburg, California ("Criterion Catalyst plants") (individually and collectively, the "worksites").  Because the processes conducted at the worksites require constant monitoring, Operators work a continuous rotating shift. Plaintiffs contend that during their shifts, they are never fully relieved from duty.  The

processes carried out at the worksites are dangerous operations that involve hazardous substances and have the potential for catastrophic consequences. Employees at the worksites work a "rotating shift schedule," meaning they are paid for all hours worked on their shift, are referred to as "shift workers" or "shift employees." Renick Decl. at ¶ 8.

At the Martinez Refinery, there are two types of Operators: Console (also known as "Board" or "Inside") Operators and Field (or "Outside") Operators.  Console Operators sit at control boards, called "consoles," inside a control facility and monitor and make adjustments to the levels, pressures, temperatures, and other indicators on equipment, products, and processes in their units to ensure that the units are operating properly.  Outside Operators work outside in the units and in satellite operating shelters, and they are responsible for maintaining, monitoring, inspecting, and making adjustments to equipment at the direction of Console Operators and supervisors.  To keep the refineries operating continuously, each unit has four crews of Operators who rotate between day and night shifts.  Every crew on every shift must have certain minimum "crew positions" filled by an Operator at all times.  *Id.* at ¶ 9.

Plaintiffs additionally allege that Operators remain responsible for their units throughout their shifts.  Plaintiffs allege that throughout their shifts, Defendants require Plaintiffs and the other Operators to monitor the refining process, respond to upsets and critical events, and maintain the safe and stable operation of their units. In order to do so, Plaintiffs and the other Operators are required to remain attentive, carry radios, and be reachable at all times during their shifts.  Plaintiffs are also required to remain in contact with supervisors and other employees working in their unit throughout their shifts.  As a result, Plaintiffs allege that they never receive off-duty breaks because they are constantly and continuously responsible for their units. *Id.* at ¶ 10.

Plaintiffs ground their claim in part on the California Supreme Court's December 22, 2016 holding in *Augustus v. ABM Securities Services, Inc.*, 2 Cal. 5th 257, 260 (2016) ("*Augustus*") which held, *inter alia*, that rest periods under Industrial Welfare Commission ("IWC") Wage Order No. 4-2001 cannot be "on call."  Plaintiffs have contended that this interpretation applies to IWC Wage Order No. 1-2001, which is the applicable wage order here.

Defendants deny each and all of the claims asserted by Plaintiffs. Defendants expressly deny any and all charges of wrongdoing or liability arising out of any of the acts, omissions, facts, matters, transactions, or occurrences alleged, or that could have been alleged, in this action. Nevertheless, Defendants have taken into account the uncertainty and risks inherent in any litigation and have also concluded that further conduct of the instant action would be protracted and expensive. Defendants, therefore, have determined that it is desirable and beneficial that this action be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement. By entering into the Settlement Agreement and joining in this motion, Defendants make no admission, concession, or indication of any fault, wrongdoing or liability whatsoever.

### C.    The Parties

#### 1.    Class Representatives

Plaintiffs David Berlanga, Brandon Ehresman, Charles Gaeth, Michael Gonzalez, John Langlitz, and Christopher Palacio are all currently employed as Operators by one or more Defendants. Operators typically work 12-hour shifts on a 28-day rotating shift schedule, alternating nights and days, which consists of 4 days on, 3 days off, 3 days on, 1 day off, 3 days on, 3 days off, 4 days on, and finally 7 days off before the cycle repeats.

Plaintiff David Berlanga works as an Operator in the Department Fuels unit at Shell Pipeline Company LP's ("Shell Pipeline's") terminal facility in Carson, California (the "Carson Terminal facility"). He has worked for Shell Pipeline and/or its predecessors since 1977. Plaintiff Brandon Ehresman works as an Operator at CRI Catalyst Company LP's catalyst production facility in Martinez, California. He has been an Operator since May 5, 2014. Plaintiff Charles Gaeth works as an Operator at Equilon Enterprises LLC dba Shell Oil Products US's ("SOPUS's") oil refinery in Martinez, California. He has been an Operator at the Martinez Refinery since October 1990. Plaintiff Michael Gonzalez also works as an Operator at SOPUS's Martinez Refinery. He has been an Operator at the Martinez Refinery since approximately 1991. Plaintiff John Langlitz also works as an Operator at SOPUS's Martinez Refinery. He has been an Operator at the Martinez Refinery since approximately 1990. Plaintiff Christopher Palacio works as an Operator in the Tank Car Loading Rack at SOPUS's Martinez Refinery.

1    He has been an Operator at the Martinez Refinery since approximately 1990. *Id*. at ¶ 11.

2        Plaintiffs allege that since January 19, 2013, each of the Named Plaintiffs worked their shifts

3    without receiving off-duty rest periods because throughout their shifts Plaintiffs and the other

4    Operators were required to monitor the refining process, respond to upsets and critical events, and

5    maintain the safe and stable operation of their units.  In order to do so, Plaintiffs were required to

6    remain attentive, carry radios, and be reachable at all times during their shifts.  Renick Decl. at ¶ 10.

7                    **2.    Defendants**

8        Defendant Equilon Enterprises LLC dba Shell Oil Products US is a Delaware corporation doing

9    business in California and is a "person" as defined by California Labor Code § 18 and by California

10   Business and Professions Code § 17201. It is an "employer" as that term is used in the California

11   Labor Code and Wage Order 1-2001. Its headquarters and principal place of business is in Houston,

12   Texas.

13       Defendant CRI US LP is a Delaware corporation doing business in California and is a "person"

14   as defined by California Labor Code § 18 and by California Business and Professions Code § 17201. It

15   is an "employer" as that term is used in the California Labor Code and Wage Order 1-2001. Its

16   headquarters and principal place of business is in Houston, Texas.

17       Defendant CRI Catalyst Company LP is a Delaware corporation doing business in California

18   and is a "person" as defined by California Labor Code § 18 and by California Business and Professions

19   Code § 17201. It is an "employer" as that term is used in the California Labor Code and Wage Order

20   1-2001. Its headquarters and principal place of business is in Houston, Texas.

21       Defendant Shell Pipeline Company LP is a Delaware corporation doing business in California

22   and is a "person" as defined by California Labor Code § 18 and by California Business and Professions

23   Code § 17201. It is an "employer" as that term is used in the California Labor Code and Wage Order

24   1-2001. Its headquarters and principal place of business is in Houston, Texas.

25       Defendants have each owned and/or operated one or more of the following worksites during the

26   relevant time period:

27       (a)    Shell Pipeline Company LP's ("Shell Pipeline's") terminal facility in Carson,

28              California;

(b)    Equilon Enterprises LLC dba Shell Oil Products US's oil refinery in Martinez, California (the "Martinez Refinery"); and

(c)    CRI Catalyst Company LP's catalyst production facilities in Martinez and Pittsburg, California.

### D.    Discovery and Investigation Conducted by Plaintiffs

Plaintiffs conducted an extensive investigation of Defendants' wage and hour practices at their four California locations, particularly in regard to the provision of rest breaks.  Plaintiffs interviewed Operators at each of the locations, and reviewed thousands of pages of relevant written materials, including employee handbooks, training materials and emergency protocol materials.  In addition, Defendants provided, and Plaintiffs reviewed, Defendants' payroll data containing all of the shifts worked by each class member during the class period and the specific pay rate which applied to each of those shifts.  Based on this extensive investigation and review of discovered materials, Plaintiffs were able to thoroughly evaluate liability and determine estimated damages.  Plaintiffs' due diligence provided a sufficient basis upon which to obtain an excellent settlement on behalf of the class.  Renick Decl. at ¶ 6.

### E.    Summary of Settlement Terms and Anticipated Schedule

#### 1.    Class Certification

The settlement class members ("Class Members") as stipulated to by the parties are:

Current and former employees of any Defendant or any affiliate of a Defendant who worked as Operators at one or more of the following facilities:

(a)    Shell Pipeline Company LP's terminal facility in Carson, California (the "Carson Terminal facility"),

(b)    Equilon Enterprises LLC dba Shell Oil Products US's oil refinery in Martinez, California (the "Martinez Refinery");

(c)    CRI Catalyst Company LP's catalyst production facilities in Martinez and Pittsburg, California ("Criterion Catalyst plants"),

during the period beginning January 19, 2013 and ending the earlier of: (a) the date of any

Division of Labor Standards Enforcement ("DLSE") exemption from the California Supreme Court's *Augustus* decision permitting Defendants to require refinery and/or catalyst plant operators to maintain radios during rest breaks; or (b) the date of Preliminary Approval. For purposes of settlement distributions, "Participating Class Members" will be those Class Members who do not timely exercise their right to opt out of the Class.

### 2.    Total Settlement Fund

The total settlement amount is Seven Million, Seven Hundred and Fifty Thousand Dollars ($7,750,000). Each Defendant is also obligated to pay the employer's share of payroll taxes, including FICA and FUDA, for payments to its employees. The Settlement is non-reversionary. Uncashed settlement check(s) if any will be awarded *cy pres* subject to Court approval. Renick Decl., Exh. 1, at ¶¶ 29, 32, 85.

### 3.    Payment of Standard Claims

The primary mechanism for distribution of the Settlement involves cash payment to each Participating Class Member according to the number of shifts of at least three and one-half (3 1/2) hours ("Qualifying Shifts") he or she worked during the Class Period. Renick Decl., Exh. 1 at ¶ 30. Any Class Member who has at worked least one (1), but no more than twenty-five (25), Qualifying Shifts shall receive credit for twenty-five (25) shifts. Renick Decl., Exh. 1, at ¶ 54.

### 4.    Additional Compensation for Active Litigants

In recognition of the risks and burdens undertaken by the Named Plaintiffs, who actively participated in the litigation, mediation and settlement of this case, the Agreement provides additional compensation in an amount not to exceed $7,500 for each of the six Named Plaintiffs. This payment shall be in addition to whatever portion of the settlement proceeds each such individual is otherwise entitled to receive. The enhancements are intended to compensate these individuals fairly in relationship to the rest of the Class in light of the additional burdens and risks they have undertaken by assisting in the prosecution of the lawsuit, including their participation in the mediation session with Barry Winograd in Oakland, California, and their active assistance with the litigation. The Named Plaintiffs have also agreed to a general release of all claims they might have against Defendants. Renick Decl., Exh. 1, at ¶ 35.

5. **Attorney's Fees and Costs**

The Settlement Agreement provides for an award of reasonable attorney's fees and costs from the Settlement Fund. Renick Decl. at ¶ 41. Plaintiffs intend to seek an award of 25% of the total Settlement Fund ($1,937,500) in addition to litigation costs of approximately $25,000. *Id.* at ¶ 21.

6. **Payment of PAGA Claims**

The total amount of the Settlement Fund allocated to PAGA penalties shall be fifty thousand dollars ($50,000), with seventy-five percent (75%) of the PAGA penalties ($37,500), being paid to the California Labor and Workforce Development Agency ("LWDA") and twenty-five percent (25%) of the PAGA penalties ($12,500), being paid to Particpating Class Members. Renick Decl., Exh. 1, at ¶ 48.

7. **Administration of Claims**

The parties have agreed to retain CAC Services Group, LLC ("CAC" or "Claims Administrator"), located in Eden Prairie, Minnesota, to act as the impartial claims administrator. CAC will be retained to calculate each class member's share, determine the amount of payroll taxes owed by Defendants, send out notice to the class members, maintain a website containing the key documents in the case, including the Settlement Agreement, class notice and motion for attorney's fees, resolve any challenges any party lodges to all or part of a particular claim, and mail the settlement checks to the authorized claimants. CAC's fees, estimated at $41,000, are to be paid out of the Settlement Fund. Renick Decl., Exh. 1, ¶¶ 10, 47.

8. **Notice to the Class**

The Settlement Agreement contemplates, among other things, that this Court will conditionally certify a settlement class and grant preliminary approval of the Settlement. After preliminary approval and class certification, the Settlement Agreement requires that the Notice of Class Action Settlement ("the Notice of Settlement") will be sent via first class mail to class members within 29 calendar days of preliminary approval. The Notice of Settlement will inform potential class members of the terms of the Settlement Agreement, their right to dispute the estimated settlement payment amount, their right to opt out of the class, their right to object to the Settlement, and their right to be heard at the final hearing on the fairness of the Settlement. Renick Decl., Exh. 1, ¶78. The Notice of Settlement will

9

provide the address for a website maintained by the claims administrator that will have links to the Notice of Settlement, motions for approval and for attorneys' fees, and any other important documents in the case. *Id*. at ¶ 78 (f).

Each member of the Class will be provided an individualized Notice form that will include the number of Qualifying Shifts worked during the Class Period, and the number of credits which form the basis for determining each Participating Class Member's share of the settlement proceeds.  In addition, each Notice of Settlement will include the Class Member's expected share of the Settlement. Renick Decl. at ¶ 78 (b).

The Notice of Settlement will advise each Class member that they have three (3) options. Those options are: (1) do nothing and receive payment; (2) request exclusion in order to be excluded from the Settlement; or (3) object to the proposed settlement by filing a written objection and appearing at the final fairness hearing.  *Id*. at ¶ 78 (c).  Additionally, the Notice of Settlement will explain how to dispute the estimated settlement payment amount, the number of Qualifying Shifts, or the applicable credits. Renick Decl. at ¶ 78 (d).

### 9.    Proposed Schedule

The following schedule sets forth a proposed sequence for the relevant dates and deadlines, assuming this Court grants preliminary approval of the Settlement.  This schedule is also stated in the proposed order filed concurrently herewith.

| | |
|---|---|
| October 1, 2018. (15 calendar days after Preliminary Approval): | Defendants to provide to the Claims Administrator a "class list" and the following information for each Class Member: (a) name; (b) last-known address; (c) e-mail address, if available; (d) employee identification number, (e) work site(s) where he or she was employed by Defendants during the Class Period; (f) number of Qualifying Shifts worked during the period beginning January 19, 2013 and ending on the earlier of: (1) the date of any Division of Labor Standards Enforcement ("DLSE") exemption from the California Supreme Court's *Augustus* decision permitting Defendants to require refinery and/or catalyst plant operators to maintain radios during rest breaks; or (2) the Preliminary Approval Date. |
| October 15, 2018. (Preliminary Approval +29): | Class Notice mailed to all Class Members |

| | |
|---|---|
| October 30, 2018. (No More than 15 days prior to Objection Deadline): | Plaintiffs' Motion for Attorney's Fees and Costs is posted on website |
| November 14, 2018. (30 calendar days after Class Notice is mailed): | Last day for class members to file written objections to the settlement with the Court. Any objector who intends to appear at the Final Approval Hearing must include a Notice of Intent to Appear in their written objection. |
| November 29, 2018. (45 calendar days after Class Notice is mailed): | Last day for class members to opt out of the settlement. |
| December 13, 2018. (Preliminary Approval +90): | Defendants to wire the Settlement Fund of Seven Million, Seven Hundred and Fifty Thousand Dollars ($7,750,000) to the Claims Administrator. |
| December 4, 2018. (Preliminary Approval +88 Days): | Claims Administrator's Declaration of Diligence [SA, ¶ 78.g] |
| January 4, 2019, 9:00 a.m.: (35 Days after Motion is Filed): | Final Fairness and Motion for Fees and Costs Hearing |
| January 18, 2019 (10 business days after the Final Approval Order): | Defendants to provide Claims Administrator each Participating Class Member's Social Security Number. |
| January 25, 2019 (15 business days after the Final Approval Order): | Claims Administrator to make all reasonable efforts to pay Participating Class members their Individual Settlement Awards on or before this date. |

## III. THE PROPOSED CLASS SETTLEMENT SATISFIES ALL OF THE REQUIREMENTS FOR PRELIMINARY APPROVAL

"A presumption in favor of voluntary settlement agreements exists, and this presumption is especially strong in class actions and other complex cases . . . because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 U.S. Dist. LEXIS 175515, at *43 (N.D. Cal. Dec. 19, 2016) (internal citation omitted); see also *Churchill Vill., L.L.C. v. GE,* 361 F.3d 566, 576 (9th Cir. 2004) (Strong judicial policy favors class action settlements); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1988) (the court's role is to determine whether the settlement terms fall within a reasonable range of possible settlements, with "proper deference to the private consensual decision of the parties" to reach an agreement rather than to continue litigating).

Federal Rule of Civil Procedure 23(e) requires court approval of a class action settlement. Approval is a two-step process under Rule 23(e), where "the Court first determines whether a proposed

11

class action settlement deserves preliminary approval and then, after notice is given to class members,

whether final approval is warranted." *Noll v. eBay, Inc.,* 309 F.R.D. 593, 602 (N.D. Cal. 2015)

(internal citations omitted); *see also Hanlon,* 150 F.3d at 1027 (after preliminary approval and notice

to the class, the Court reviews the fairness of the settlement at final approval); *Manual for Complex

Litigation* (Fourth) § 21.632 (explaining that courts "must make a preliminary determination on the

fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of

notice of the certification, proposed settlement, and date of the final fairness hearing").

      Courts in the Northern District of California have found preliminary approval of a settlement

appropriate when the settlement: (1) falls within the range of possible approval; (2) appears to be the

product of serious, informed, non-collusive negotiations; (3) does not improperly grant preferential

treatment to class representatives or segments of the class; and (4) has no obvious deficiencies.  *Angell

v. City of Oakland, No. 13-cv-00190 NC*, 2015 U.S. Dist. LEXIS 1037, at *21-22 (N.D. Cal. Jan. 5,

2015) (quoting *Harris v. Vector Mktg. Corp.,* No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at

*23 (N.D. Cal. Apr. 29, 2011), and *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D.

Cal. 2007)).  "Closer scrutiny is reserved for the final approval hearing."  *Harris*, 2011 U.S. Dist.

LEXIS 48878, at *24.

      Preliminary approval is proper here because the Settlement falls within the range of reasonable

approval, is the product of more than six months of arms-length, non-collusive negotiations by

experienced class counsel, does not improperly grant preferential treatment to Class Representatives,

and has no obvious deficiencies.  Renick Decl. at ¶¶ 5-9.

**A.**    **The Proposed Settlement Falls Within the Range of Possible Approval**

      The recovery here is fair, reasonable, and adequate in light of the continued risk, costs, and

uncertainty of litigation.  "In most situations, unless the settlement is clearly inadequate, its acceptance

and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural

Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal citation omitted).

Approval of a class settlement is justified where "the settlement terms compare favorably to the

uncertainties associated with continued litigation regarding the contested issues in th[e] case."  *Id.* at

526.  *See also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982)

1   ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of

2   cost and elimination of risk, the parties each give up something they might have won had they

3   proceeded with litigation.").

4        The Settlement provides for the payment of $7,750,000.  Based on Plaintiffs' assessment of

5   damages and the review of timecard and payroll data encompassing all shifts worked until the time of

6   mediation, Plaintiffs' counsel estimate that the Settlement represents 60% of the damages incurred.

7   Renick Decl. at ¶ 31.  This is an outstanding settlement and is within the range of reasonableness.  *See*

8   *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (finding settlement amounting to

9   10% of estimated damages fair and reasonable).

10       In addition, Class Counsel, who have many years of experience litigating class action and wage

11   and hour cases and extensive experience representing this class in wage and hour class actions against

12   Defendants, recommend the proposed settlement and believe that it is in the best interests of the Class.

13   Renick Decl at ¶ 31.

14           Great weight is accorded to the recommendation of counsel, who are most closely
             acquainted with the facts of the underlying litigation.  This is because parties represented
15           by competent counsel are better positioned than courts to produce a settlement that fairly
             reflects each party's expected outcome in the litigation.  Thus, the trial judge, absent
16           fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of
             counsel.

17   *DirecTV*, 221 F.R.D. at 528 (internal quotations, alterations, and citations omitted).

18       The Settlement Agreement provides for a reasonable award of attorney's fees.  Plaintiffs intend

19   to seek an award of 25% of the Settlement, $1,937,500.  The fee award contemplated by the Settlement

20   Agreement in this case is well within the reasonable range under California law and a "benchmark" for

21   a reasonable award under Ninth Circuit law.  *See In re Consumer Privacy Cases*, 175 Cal. App. 4th

22   545, 557 n.13 (2009) ("'Empirical studies show that, regardless whether the percentage method or the

23   lodestar method is used, fee awards in class actions average around one-third of the recovery.'");

24   *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 949 (9th Cir. 2015) (in the

25   9th Circuit, 25% is the benchmark attorney's fee award in common fund cases); see also *Jones v. GN*

26   *Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 942 (9th Cir. 2011) ("courts

27   typically calculate 25% of the [common] fund as the 'benchmark' for a reasonable fee award").

28

Plaintiffs expect their lodestar at the time of Final Approval to be in excess of $700,000 resulting in a multiplier of less than 3.0. Renick Decl. at ¶ 22. A multiplier of 3.0 falls within the Ninth Circuit's presumptively acceptable range of 1.0-4.0. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002); s*ee also Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (applying 2.83 multiplier); *Craft v. City of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (court ordered attorneys' fee of 25% of the settlement fund, where lodestar cross-check showed a multiplier of 5.2).

For the foregoing reasons, Class Counsel strongly believe that the Settlement is a fair, reasonable, and adequate resolution of the claims of the Class and is preferable to continued litigation.

### B.    The Proposed Class Settlement is the Product of Serious, Informed, Non-Collusive, and Good-Faith Negotiations

Settlement negotiations in this case were conducted over more than six months and, at all times, were adversarial and at arms' length. Both during and after the mediation, the parties continued to exchange written proposals and discuss settlement terms through their counsel.

Class Counsel worked closely with the Named Plaintiffs and other class members to gain knowledge about the rest period policies and practices and the general working conditions of Operators at each of the work sites included in the proposed settlement. Class Counsel sought and obtained input from the Named Plaintiffs in this case regarding the terms of a proposed settlement. Renick Decl., Exh. 1, at ¶ 35.

Thus, the proposed class settlement is the result of serious, informed, non-collusive, and good-faith negotiations.

### C.    The Settlement Does Not Offer Preferential Treatment to the Class Representatives or Other Members of the Class

The Settlement does not offer preferential treatment to the Class Representatives or other members of the Class, as the net settlement will be fairly distributed amongst Participating Class Members on a pro rata basis. A Credit will be given to each Qualifying Shift (shift of at least three and one-half (3 1/2) hours) worked by a member of the Class for the time period of January 19, 2013 to the date DLSE Exemption or Preliminary Approval, whichever is sooner. Any Participating Class Member who has worked at least one (1) Qualifying Shift, but no more than twenty-five (25) Qualifying Shifts,

will have their Credits rounded so that they receive twenty-five (25) Credits.  The value of each Credit ("Credit Value") will equal the Net Settlement Proceeds divided by the total number of Credits for all Class Members.  Each Participating Class Member's "Individual Settlement Award" shall equal that individual's total number of Credits multiplied by the Credit Value.  Renick Decl., Exh. 1, at ¶¶ 54-56.

The Settlement Agreement authorizes an incentive award to each of the six Named Plaintiffs of $7,500. "[T]he Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris,* 2011 U.S. Dist. LEXIS 48878, at *28 (citing *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003)); *see also Resnick*, 779 F.3d at 943 ("Incentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives.").  Courts routinely approve incentive awards to compensate Named Plaintiffs for the work done on behalf of the class, the risks they incurred during the course of the class action litigation, and sometimes, to recognize their willingness to act as a private attorney general. *Resnick,* 779 F.3d at 943; *see also Rodriguez*, 563 F.3d at 958.

Here, the Named Plaintiffs have participated in the successful prosecution of the Class Action, including taking the risks of serving as the named representatives, providing factual information and documentation necessary to the prosecution of this class action, attending the mediation session, and maintaining contact with Class Counsel.  In exchange for the service awards, the Named Plaintiffs have agreed to execute a General Release as to any and all claims they might have against Defendants and the Released Parties.

Moreover, the size of the incentive awards – $7,500 to each of the six Named Plaintiffs – is consistent with the range of incentive awards approved by other federal judges in class action cases. *See Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 266 (N.D. Cal. Mar. 19, 2015) (courts typically approve incentive awards up to $10,000); *see also Covillo v. Specialty's Café,* No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, at *28-29 (N.D. Cal. Mar. 6, 2014) (ordering an $8,000 incentive award for each of the three named plaintiffs); *Chu v. Wells Fargo Invs., LLC,* Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 U.S. Dist. LEXIS 15821, at *15-16 (N.D. Cal. Feb. 16, 2011) (awarding a $10,000 incentive award to two named plaintiffs). Recently, Judge Gonzalez Rogers

15

approved incentive awards in the amount of $7500 to each of the named plaintiffs in a similar rest break case filed by Hadsell Stormer & Renick and Gilbert & Sackman against Phillips 66 Company, *Buzas v. Phillips 66 Company*, Case No. 4:17-cv-00163-YGR (March 6, 2018), Dkt. #47.

### D.     The Settlement Agreement Has No Obvious Deficiencies

The Settlement Agreement has no obvious deficiencies, and it comports with the Northern District's Procedural Guidance for Class Action Settlements.  As discussed throughout, the recovery here, constituting 68% of the estimated damages, is fair, reasonable, and adequate in light of the continued risk, costs, and uncertainty of litigation.  The incentive awards for the Named Plaintiffs in the amount of $7500 each are within the range of incentive awards approved by other federal judges in class action cases.  The attorneys' fee provision, seeking an award of 25% of the common fund, is the benchmark percentage in the Northern District, and the Motion for Attorney's Fees will be available on the claims administrator's website for a reasonable period of time and no later than 14 calendar days prior to the deadline for class members to file an objection to the Settlement Agreement.  Renick Decl. Exh. 1,at ¶ 78(f)**.**

Moreover, as discussed below, the proposed Notice of Class Action Settlement and the manner of providing notice as agreed upon by the parties is the best notice that is practicable, as required under Federal Rules of Civil Procedure, Rule 23(c).  The proposed Notice adequately describes the nature of the action, the definition of the class certified, the class claims, that a class member may enter an appearance through an attorney if the member so desires, that the court will exclude from the class any member who requests exclusion, the time and manner for requesting exclusion, that the class member may object to the Settlement, and the binding effect of a class judgment on members under Rule 23(c). Renick Decl., Exh. A to the executed Joint Stipulation of Class Action Settlement and Release.

The Settlement is non-reversionary, and any uncashed checks will be awarded *cy pres* pursuant to this Court's approval.  The proposed *cy pres* recipient will have a nexus with California Labor laws at issue in this case.  *See Dennis v. Kellogg Co.,* 697 F.3d 858, 865 (9th Cir. 2012) (a *cy pres* award should be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class).  Renick Decl. ¶ 18.

1    Finally, the Settlement Agreement provides that within ten (10) days after the filing of the

2    Motion for Preliminary Approval, Defendants shall comply with the "Notification of Settlement"

3    requirements of the Class Action Fairness Act, 28 U.S.C. § 1715.  Defendants shall provide Class

4    Counsel with a copy of the notices provided to the appropriate state officials, as defined under 28

5    U.S.C. § 1715.  Prior to the date set for the preliminary approval hearing, Defendants shall file a proof

6    of service with the Court indicating compliance with 28 U.S.C. § 1715.  Renick Decl., Exh. 1 at ¶ 76.

7    **IV.    CONDITIONAL CLASS CERTIFICATION IS APPROPRIATE**

8    When the parties enter into a settlement agreement before the district court certifies the class,

9    the Court, at the preliminary approval stage, "may make either a preliminary determination that the

10   proposed class action satisfies the criteria set out in [Federal Rule of Civil Procedure] Rule 23 or

11   render a final decision as to the appropriateness of class certification." *Spann v. J.C. Penney Corp.*,

12   314 F.R.D. 312, 318 (C.D. Cal. 2016).

13   Conditional class certification of a settlement class is appropriate if the class action meets the

14   four prerequisites identified in Rule 23(a), numerosity, commonality, typicality, and adequacy of

15   representation, and additionally fits within one of the three subdivisions of Rule 23(b).  Here, Plaintiffs

16   have provided a summary of the arguments and evidence which support conditional certification of the

17   class for purposes of settlement, showing that there is numerosity, commonality, typicality, and

18   adequacy of representation, and under Rule 23(b)(3), that common questions of law and fact

19   predominate.

20   **A.    The Proposed Class is so Numerous that Joinder of All Members is Impracticable**

21   The proposed Class is defined as follows: "current and former employees of any Defendant or

22   any affiliate of a Defendant who worked as Operators at one or more of the following facilities: (a)

23   Shell Pipeline Company LP's terminal facility in Carson, California (the 'Carson Terminal facility'),

24   (b) Equilon Enterprises LLC dba Shell Oil Products US's oil refinery in Martinez, California (the

25   'Martinez Refinery'); (c) CRI Catalyst Company LP's catalyst production facilities in Martinez and

26   Pittsburg, California ('Criterion Catalyst plants'), during the period beginning January 19, 2013 and

27   ending the earlier of: (a) the date of any Division of Labor Standards Enforcement ('DLSE')

28

1    exemption from the California Supreme Court's *Augustus* decision permitting Defendants to require

2    refinery and/or catalyst plant operators to maintain radios during rest breaks; or (b) the date of

3    Preliminary Approval." The Class includes approximately 500 members. Renick Decl., Exh. 1 ¶ 27.

4    The proposed class is, therefore, so large that joinder is not practicable and disposition of their claims

5    as a class will benefit the parties and the Court. *See Slaven v. BP America, Inc.,* 190 F.R.D. 649, 654

6    (C.D. Cal. 2000) ("As a general matter, courts have found that numerosity is satisfied when class size

7    exceeds 40 members. . . .").

### B.    There are Questions of Law and Fact Common to the Class

9    To show commonality, a plaintiff "must demonstrate that there are questions of fact and law

10   that are common to the class." *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 981 (9th Cir. 2011)

11   (citing Fed. R. Civ. P. 23(a)(2)). "The requirements of Rule 23(a)(2) have been construed permissively,

12   and all questions of fact and law need not be common to satisfy the rule." *Id.* at 981.

13   Here, Plaintiffs assert that there are common questions of fact and law arising from the putative

14   Class members' employment at Defendants' four California petroleum and chemical products facilities,

15   including whether Defendants failed to authorize and permit Class members to take rest periods in

16   accordance with applicable California law because they failed to relieve Class members during their

17   rest periods of all work duties.

### C.    The Claims Alleged by the Named Plaintiffs are Typical of the Claims Which Could be Alleged by any Member of the Class

19   "The test of typicality is whether other members have the same or similar injury, whether the

20   action is based on conduct which is not unique to the named plaintiffs, and whether other class

21   members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d

22   497, 508 (9th Cir. 1992).

23   The claims alleged by the Named Plaintiffs arise out of the challenged practices and common

24   courses of conduct by Defendants and are based on the same legal theories as the claims of the putative

25   class members; thus, they are typical of those claims which could be alleged by any member of the

26   proposed class. The legal issues as to which California laws are violated by such conduct apply

27   equally to the Named Plaintiffs and the putative class members. Further, the relief sought by the

Named Plaintiffs is typical of the relief which would be sought by each member of the proposed class if they were to file separate actions.

### D.    The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

To determine whether named plaintiffs will adequately represent a class, courts look to (a) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (b) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

Here, Plaintiffs assert that they are proper representatives of the proposed class because they will fairly and adequately represent and protect the interests of all putative class members as neither the Named Plaintiffs nor their counsel have any apparent conflicts of interest with the absent members of the Class and their claims arise out of the same set of facts as those of the Class.  The Named Plaintiffs have been committed to the vigorous prosecution of this case and have reached a resolution they believe is in the best interests of the Class.  Moreover, Plaintiffs' counsel, Hadsell Stormer & Renick, LLP and Gilbert & Sackman, A Law Corporation, are highly experienced class counsel, having handled dozens of similar wage and hour class actions, as well as other types of class and complex litigation.  Renick Decl., Exh. 1 ¶¶ 35-37; Young Decl.  ¶¶2-9.

### E.    Common Questions of Law and Fact Predominate and a Class Action is Superior

Pursuant to Rule 23(b)(3), class adjudication is proper if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Sandoval v. Roadlink United States Pac., Inc.*, No. EDCV 10-00973 VAP(DTBx), 2011 U.S. Dist. LEXIS 130378, at *2 (C.D. Cal. Oct. 9, 2011); Fed. R. Civ. P. 23(b)(3).

#### 1.    Common Issues Predominate

"Common issues predominate over individual issues when the common issues represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Edwards v. The First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015).

1    Under California law, an employer is required to authorize and permit all employees to take

2  duty free rest periods of 10 minutes per four hours of work or major fraction thereof.  Wage Order 1-

3  2001 §12(A); *see Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1032 (2012).

4  Plaintiffs' main claim in this case is that Defendants' lack of a rest break policy or practice which

5  authorizes and permits duty-free rest breaks and uniform failure to provide such breaks is a violation of

6  California law.  This issue is suitable for class adjudication because it pertains to all members of the

7  class.  *See Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, 1150 (2012) ("The lack of a

8  meal/rest break policy and the uniform failure to authorize such breaks are matters of common

9  proof."); *Benton v. Telecom Network Specialists, Inc.,* 220 Cal. App. 4th 701, 728-29 (2013) (lack of a

10  break policy is common evidence that the employer failed to provide breaks).

11    Plaintiffs assert that Shell's defense that it permitted employees duty free rest periods is also

12  common to the class.  *See Lubin v. Wackenhut Corp.*, 5 Cal. App. 5th 926, 957 (2016) (The employer's

13  "defense that it had a policy or practice authorizing rest breaks is susceptible to classwide resolution.").

14                  **2.      A Class Action is the Superior Method of Adjudication**

15    Class resolution is superior to other available methods for the fair and efficient adjudication of

16  the controversy, particularly in the settlement context.  Plaintiffs assert that the prosecution of separate

17  actions by individual members of the proposed class would create a risk of inconsistent and/or varying

18  adjudications with respect to the individual members of the class, establishing incompatible standards

19  of conduct for Defendants, and resulting in the impairment of putative class members' rights and the

20  disposition of their interests through actions to which they are not parties.  The prosecution of separate

21  actions and individualized litigation would also increase the delay and expense to all parties and the

22  court system.  Furthermore, given the relatively small amounts at issue, approximately $15,000 per

23  class member, it is unlikely that any class member (especially a current employee) — acting alone —

24  would have pursued these claims against Defendants.  Finally, compared with other methods such as

25  intervention or the consolidation of individual actions, a class action is fairer and more efficient.

26  **V.    NOTICE TO CLASS OF FINAL APPROVAL HEARING**

27    The Court's order preliminarily approving a class settlement must include, *inter alia,* that

28

notice be given to all class members who would be bound by the settlement.  Fed. R. Civ. P. 23(e)(1).

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*, 150

F.3d at 1025.  A class settlement notice "is satisfactory if it generally describes the terms of the

settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward

and be heard."  *Churchill Vill., L.L.C.*, 361 F.3d at 575 (internal quotations and citations omitted).

### A.    The Proposed Settlement Notice Contains All of the Required Components

Rule 23 requires that the content of the class notice include, in a manner that is understandable

to potential settlement class members: (1) the nature of the action; (2) the definition of the class

certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance

through an attorney if the member so desires; (5) that the court will exclude from the class any member

who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of

a class judgment on members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

The proposed Settlement Notice is set forth as Exhibit A to the Settlement Agreement (Ex. 1 to

Renick Decl.) and meets all of the requirements set forth in Rule 23, including: (1) the nature of the

litigation; (2) a description of the settlement class; (3) the class claims; (4) that a class member may

enter an appearance in person or through their own attorney; (5) that a class member can request

exclusion from the case; (6) the process and time by which a class member must request exclusion; and

(7) the scope and binding effect of the release.  In addition, the Notice of Settlement provides the

process and timing for Class members to object to the proposed settlement, identifies Class Counsel,

specifies the amount of proposed attorneys' fees and costs that Class Counsel seek, and explains how

to obtain additional information regarding the Settlement.  Finally, as noted above, the Settlement

Notice will explain to Class Members how to file a dispute regarding the estimated settlement payment

amount, the number of Qualifying Shifts, or the applicable credits.

### B.    The Method of Notice is Appropriate

The Parties have agreed to use CAC Services Group, LLC, to administer the Settlement.  CAC

will disseminate the proposed Settlement Notice, which contains all of the information required under

Rule 23(c)(2)(B).  *See* Renick Decl. ¶ 23; Proposed Settlement Notice, Exh. A to Exh. 1 to Renick

Decl. CAC is an experienced and well-regarded class action settlement administrator.  CAC's

estimated compensation for the settlement administration is $41,000.  These costs are reasonable and amount to less than one percent of the Settlement.  Renick Decl., Exh. 1 at ¶ 24.

The Settlement Notice will be mailed by First Class Mail, with postage prepaid, to each Class Member at his or her last-known address maintained in Defendants' employee records.  Any settlement notice returned as undelivered shall be sent to the forwarding address affixed thereto, if any.  If no forwarding address is provided for a settlement notice that is returned as undelivered, CAC will use a computer search method to locate a current address. If no current address is located, a notice will be sent via electronic mail if an email address is available for the class member.  If no email address is available, the settlement notice for that individual will be deemed undeliverable.  Any amounts owed to members of the class who cannot be located will be awarded *cy pres* to organizations in Northern California that provide job training for the working poor.  Renick Decl., ¶15.

The Settlement Agreement provides the following method for the Notice of Settlement to be provided to the Class Members: Within 15 calendar days following receipt of the order from this Court granting preliminary approval, Defendants will provide the Claims Administrator, CAC, with information regarding class members.  Within 14 calendar days after receiving the above information from Defendant, the Claims Administrator will mail, by first-class U.S. mail, the Notice of Settlement to all class members.  Before the mailing, the Claims Administrator will run the addresses through the U.S. Postal Service's Change of Address Database.  All Class Members who do not file a timely Request for Exclusion will participate in the allocation of the Settlement and will be sent a check for their allocation of the Settlement.  Renick Decl. at ¶ 19.

## VI.    **CONCLUSION**

For the foregoing reasons, the parties respectfully request that the Court preliminary approve the class settlement, conditionally certify the proposed settlement class, and enter the order submitted concurrently herewith.

DATED:  August 10, 2018                    Respectfully submitted,

LAFAYETTE & KUMAGAI LLP

*/s/ Gary T. Lafayette*

22

Gary T. Lafayette
Attorneys for Defendants Equilon Enterprises LLC dba
Shell Oil Products US, CRI U.S. LP, CRI Catalyst
Company LP, and Shell Pipeline Company LP

HADSELL STORMER & RENICK, LLP


*/s/ Randy Renick*
Randy Renick
Attorneys for Plaintiffs David Berlanga, Brandon
Ehresman, Charles Gaeth, Michael Gonzalez, John
Langlitz, and Christopher Palacio

GILBERT & SACKMAN
A LAW CORPORATION


*/s/ Josh Young*
Josh Young
Attorneys for Plaintiffs David Berlanga, Brandon
Ehresman, Charles Gaeth, Michael Gonzalez, John
Langlitz, and Christopher Palacio

### SIGNATURE ATTESTATION

I hereby attest that I have obtained the concurrence of Gary Lafayette, counsel for Defendants, and Joshua Young, counsel for Plaintiffs, for the filing of this Joint Motion for Preliminary Approval of Settlement Agreement.

*/s/ Randy Renick*
Randy Renick