JAY SMITH (CA Bar No. 166105)
(Email: js@gslaw.org)
JOSHUA F. YOUNG (CA Bar No. 232995)
(Email: jyoung@gslaw.org)
GILBERT & SACKMAN
A LAW CORPORATION
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Fax: (323) 937-9139

RANDY RENICK (CA Bar No. 179652)
(Email: rrr@hadsellstormer.com)
CORNELIA DAI (CA Bar No. 207435)
(Email: cdai@hadsellstormer.com)
HADSELL STORMER & RENICK, LLP
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone: (626) 585-9600
Fax: (626) 577-7079

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BERLANGA, BRANDON EHRESMAN, CHARLES GAETH, MICHAEL GONZALEZ, JOHN LANGLITZ, and CHRISTOPHER PALACIO, individually and on behalf of all similarly situated current and former employees,<br><br>            Plaintiffs,<br><br>v.<br><br>EQUILON ENTERPRISES LLC dba SHELL OIL PRODUCTS US, CRI U.S. LP, CRI CATALYST COMPANY LP, and SHELL PIPELINE COMPANY LP, and DOES 1 through 10, inclusive,<br>                            . | Case No. 17-cv-00282-MMC<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:        January 18, 2019<br>TIME:        9:00 a.m.<br>PLACE:      San Francisco Courthouse,<br>                    Courtroom 7, 19th Floor<br><br>Honorable Maxine M. Chesney |

PLEASE TAKE NOTICE that on January 18, 2019, at 9:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 7, 19th Floor of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs David Berlanga, Brandon Ehresman, Charles Gaeth, Michael Gonzalez, John Langlitz, and Christopher Palacio, individually and on behalf of themselves and all members of the conditionally certified class, will move and hereby do move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the order concurrently filed herewith granting final approval of the class action settlement and the plan of allocation and entry of judgment.

The motion will be based on the Federal Rules of Civil Procedure, the foregoing notice, memorandum of points and authorities, and declarations and exhibits filed concurrently herewith, and the pleadings, records and files in this action.

DATED:  January 4, 2019          Respectfully submitted,

HADSELL STORMER & RENICK, LLP

GILBERT & SACKMAN, A LAW CORPORATION

_/s/ Randy Renick_
Randy Renick
*Attorneys for Plaintiffs David Berlanga, Brandon Ehresman, Charles Gaeth, Michael Gonzalez, John Langlitz, and Christopher Palacio*

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS .....................................................................................2

    A.    Procedural Background............................................................................2

    B.    Pertinent Factual Background..................................................................3

    C.    Discovery and Investigation Conducted by Plaintiffs .............................5

III.  ARGUMENT ........................................................................................................5

    A.    The Court-Approved Notice Plan Was Fully Implemented and
           Satisfies Rule 23 Requirements. ..............................................................5

    B.    The Settlement is Fair, Adequate, and Reasonable and Should be
           Granted Final Approval.............................................................................8

          1.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and
                Likely Duration of Further Litigation ........................................9

          2.    The Amount Offered in Settlement............................................10

          3.    The Presence of Governmental Entities.....................................10

          4.    Experience and Views of Counsel .............................................11

          5.    The Reaction of the Class Members ..........................................11

    C.    The Plan of Allocation Is Fair, Adequate, and Reasonable and
           Should be Approved................................................................................13

    D.    The Court Should Grant Plaintiffs' Request for Incentive Awards for the Six
           Named Plaintiffs. ...................................................................................16

    E.    Final Certification of the Class for Settlement Purposes Is Proper.......................18

          1.    The Settlement Class Satisfies the Rule 23(a) Requirements...................19

          2.    The Settlement Class Meets the Requirements of Rule 23(b) .................20

IV.   CONCLUSION......................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Augustus v. ABM Securities Services, Inc.*,
   2 Cal. 5th 257, 260 (2016) ................................................................. 4, 9, 21

*Bell v. Home Depot U.S.A., Inc.*,
   No. 2:12-cv-02499 ........................................................................................ 9

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ............................................................... 17

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................. 13, 14

*Bradley v. Networkers Int'l, LLC*,
   211 Cal. App. 4th 1129 (2012) ................................................................... 21

*Brinker Restaurant Corp. v. Superior Court*,
   53 Cal.4th 1004 (2012) ............................................................................... 20

*Browne v. Am. Honda Motor Co.*,
   2010 U.S. Dist. LEXIS 145475 (C.D. Cal. July 29, 2010) ...................... 8, 12

*Buzas v. Phillips 66 Company*,
   No. 4:17-cv-00163-YGR (N.D. Cal.), Dkt. 47 ........................................... 17

*In re Capital One Tel. Consumer Prot. Act Litig.*,
   2015 U.S. Dist. LEXIS 17120 (N.D. Ill. Feb. 12, 2015) .......................... 18

*Chu v. Wells Fargo Invs.*,
   LLC, No. C 05-4526 MHP, 2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 15, 2011) ............ 17, 18

*In re Citric Acid Antitrust Litig.*,
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) ..................................................... 13

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ......................................................................... 9

*In re Continental Illinois Securities Litig.*,
   962 F.2d 566 (7th Cir. 1992) ...................................................................... 16

*Covillo v. Specialty's Café*,
   No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837 (N.D. Cal. Mar. 6, 2014) .......................... 18

*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000)................................................................. 16

ii

**TABLE OF AUTHORITIES**
(CONTINUED)

Page(s)

**Cases**

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ........................................................................................ 16

*Edwards v. The First Am. Corp.*,
    798 F.3d 1172 (9th Cir. 2015) ...................................................................................... 20

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ........................................................................................ 19

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ............................ 8

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 21

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ........................................................................................ 19

*Harris v. Vector Mktg. Corp.*,
    No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) ........... 14

*In re High-Tech Emple. Antitrust Litig.*,
    No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118051 (N.D. Cal. Sep. 2, 2015)........... 8, 15

*Hopson* v. *Hanesbrand Inc.*,
    No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) ............ 18

*In re Hyundai & Kia Fuel Econ. Litig.*,
    Nos. 15-56014, 15-56025, 15-56059, 15-56061, 15-56064, 15-56067, 2018 U.S.
    App. LEXIS 1626 (9th Cir. Jan. 23, 2018) ............................................................... 18, 19

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) .......................................................................................... 6

*Lemus v. H&R Block Enters. LLC*,
    2012 U.S. Dist. LEXIS 119026 (N.D. Cal. Aug. 22, 2012)...................................... 17, 18

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) .................................................................................. 8, 10

*Lubin v. Wackenhut Corp.*,
    5 Cal. App. 5th 926, 957 (2016) ................................................................................... 21

*Marshall v. Holiday Magic, Inc.*,
    550 F.2d 1173 (9th Cir. 1977) ..................................................................................... 5, 7

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**Cases**

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................. 9, 18, 20

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*,
  618 F.3d 988 (9th Cir. 2010) ........................................................................ 7

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................................... 10, 11

*In re Netflix Privacy Litig.*,
  No. 5:11-CV-00379 EJD, 2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) ......... 11, 12, 13

*Officers for Justice v. Civil Svc. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ........................................................................ 8

*In re Oracle Sec. Litig.*,
  No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 18, 1994) ........................ 15

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................ 6

*Sandoval v. Roadlink United States Pac., Inc.*,
  No. EDCV 10-00973 ................................................................................ 20

*Sandoval v. Tharaldson Employee Mgmt, Inc.*,
  2010 U.S. Dist. LEXIS 69799 ...................................................................... 18

*Slaven v. BP America, Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) ................................................................... 19

*Spalding v. City of Oakland*,
  No. 11-cv-02867 TEH, Dkt. No. 99 (N.D. Cal. Sept. 9, 2013) ....................................... 18

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...................................................................... 16, 17

*Stewart v. San Luis Ambulance, Inc.*,
  878 F.3d 883 (9th Cir. 2017) ........................................................................ 9

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ........................................................................ 7, 8

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ........................................................................ 8

iv

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**Cases**

*Viceral v. Mistras Group, Inc.*
No. 15-cv-02198-EMC, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ............................................ 14

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003), aff'd 396 F.3d 96 (2d Cir. 2005) ........................................ 10

*Wren v. RGIS Inventory Specialists*,
No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667 (N.D. Cal. Apr. 1, 2011) ............................ 16

**Statutes**

Cal. Labor Code § 226 ....................................................................................................................... 3

Cal. Labor Code § 226.7 .................................................................................................................... 3

Cal. Labor Code § 2699(l)(2) .......................................................................................................... 10

Cal. Bus. & Prof. Code § 17200 ....................................................................................................... 3

28 U.S.C. § 1715 ............................................................................................................................. 10

29 U.S.C. § 185 ................................................................................................................................. 3

**Rules**

Fed. R. Civ. P. 23 .....................................................................................................................*passim*

**Wage Orders**

IWC Wage Order No. 1-2001 ..................................................................................................... 5, 20

IWC Wage Order No. 4-2001 ..................................................................................................... 4, 21

**Miscellenous**

California Private Attorneys General Act ...................................................................................*passim*

PLTIFFS' MOTION FOR FINAL APPROVAL OF SETTLMNT AGRMNT AND PLAN OF ALLOC;
MEMO OF POINTS AND AUTHORITIES IN SUPP THEREOF/Case No. 17-cv-00282-MMC

## I. **INTRODUCTION**

Plaintiffs David Berlanga, Brandon Ehresman, Charles Gaeth, Michael Gonzalez, John Langlitz, and Christopher Palacio ("Named Plaintiffs") seek final approval of the proposed class action settlement ("Settlement") with Defendants Equilon Enterprises LLC dba Shell Oil Products US, CRI U.S. LP, CRI Catalyst Company LP, and Shell Pipeline Company LP ("Defendants") of wage and hour claims brought on behalf of refinery operators employed by Defendants.  The Settlement is attached hereto as Exhibit 1 to the Declaration of Randy Renick ("Renick Decl.").

On September 21, 2018, the Court granted Plaintiffs' Motion for Preliminary Approval of Settlement Agreement.  (*See* Order, Dkt. 58.)  The Settlement provides that Defendants will pay $7,750,000 for the benefit of the Class, which is defined as:

> Current and former employees of any Defendant or any affiliate of a Defendant who worked as Operators at one or more of the following facilities:
>
> (a)    Shell Pipeline Company LP's terminal facility in Carson, California (the "Carson Terminal facility"),
> (b)    Equilon Enterprises LLC dba Shell Oil Products US's oil refinery in Martinez, California (the "Martinez Refinery"); and/or
> (c)    CRI Catalyst Company LP's catalyst production facilities in Martinez and Pittsburg, California ("Criterion Catalyst plants"),
>
> during the period beginning January 19, 2013 and ending September 21, 2018.

(*Id.* at 2.)

The Settlement provides for cash payment to Class Members according to the number of continuous shifts of at least three and one-half (3½) hours worked as an Operator during the class period ("Qualifying Shift") (Renick Decl., Ex. 1 ("Settlement Agreement"), at ¶¶ 30, 54); service awards not to exceed $7,500 for each of the six Named Plaintiffs (*id.* at ¶ 35); $50,000 in penalties under the Private Attorneys General Act ("PAGA"), with 75% of the PAGA penalties ($37,500) being paid to the California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties ($12,500) being paid to Settlement Class Members who do not opt out (*id.* at ¶ 48); an estimated $41,000 to CAC Services Group, LLC[1] ("CAC" or "Claims Administrator") for claims

---

[1] CAC's Services invoice of the Costs of Administration came in under budget at $35,587.82.

1

PLTIFFS' MOTION FOR FINAL APPROVAL OF SETTLMNT AGRMNT AND PLAN OF ALLOC; MEMO OF POINTS AND AUTHORITIES IN SUPP THEREOF/Case No. 17-cv-00282-MMC

1    administration (*id.* at ¶ 47); and reasonable attorneys' fees and costs (Renick Decl., Ex. 1, at ¶¶ 41-42).

2    The Court should grant final approval of the Settlement as it is fair, reasonable, and adequate.

3    The Settlement provides for payment of $7,750,000 on an all-cash, non-reversionary basis, and is the

4    result of arms-length negotiations following an extensive investigation of liability and damages

5    conducted by Plaintiffs. (Renick Decl. ¶ 13.) The net settlement to be distributed to the Class after the

6    reduction of the LWDA payment for PAGA penalties, attorneys' fees, costs, incentive awards, and

7    administration costs is $5,674,440.41. (Johnson Decl. ¶ 16.) The average payment to each of the 497

8    Class Members who worked Qualifying Shifts is $11,417.39. (*Id.*) Thus, the financial benefit

9    conferred upon the class is significant, and the recovery here is fair, reasonable, and adequate in light

10    of the substantial benefit conferred on the class members and the risk, expenses, and uncertainty of

11    continued litigation.

12    In addition, the reaction of the Class Members has been very positive and favors approval of

13    the Settlement.  Only one of the 502 Class Members has objected, and none have opted out. (Johnson

14    Decl. ¶¶ 11-12.) The Claims Administrator properly implemented the Notice Plan, and only three (3)

15    remain undeliverable. (*Id.* ¶ 9.) Efforts to locate those three will continue for at least another 180 days.

16    (Renick Decl., Ex. 1, at ¶ 88.)   There were three timely disputes, which have been resolved based on

17    data provided to the Claims Administrator. (Renick Decl. ¶ 24; Johnson Decl. ¶ 14.)

18    The Court should also approve the plan of allocation, whereby the court-approved attorneys'

19    fees and costs, court-approved service awards, administrative costs, and payment to the LWDA under

20    PAGA are deducted from the Settlement, and a formula based on Qualifying Shifts is used for

21    distribution to the Class Members of the resulting Net Settlement Proceeds.

22    In addition, the requested incentive awards in the amount of $7,500 for each of the Named

23    Plaintiffs is consistent with a fair, just, and adequate settlement.

24    Final approval of certification for purposes of settlement under Fed. R. Civ. P. 23 is also proper.

25    **II.    STATEMENT OF FACTS**

26    **A.    Procedural Background**

27    On January 19, 2017, Plaintiffs filed their complaint against Defendants in *David Berlanga, et*

28    *al., v. Equilon Enterprises LLC dba Shell Oil Products US,* Case No. 4:17-cv-00282, in the Northern

District of California (the "Complaint"). The Complaint alleged the following causes of action: (1) failure to authorize and permit duty free rest periods; (2) failure to furnish accurate wage statements; (3) penalties under the California Private Attorneys General Act; and (4) violation of the Unfair Competition Law, Business & Professions Code § 17200.  Plaintiffs sought unpaid wages, statutory and civil penalties, restitution, attorneys' fees and costs, interest, and injunctive and declaratory relief for the time period from January 19, 2013 to the present.  (Renick Decl. ¶ 3.)

Plaintiffs filed a First Amended Class Action Complaint for Damages, Restitution, and Injunctive Relief on May 19, 2017. (*Id*. ¶ 4.) Defendants filed a motion to dismiss the amended complaint, primarily arguing that Plaintiffs' claim under California Labor Code § 226.7 is preempted by Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. They further asserted that the California Labor Code § 226 and Unfair Competition Law claims fail on the basis that rest break premiums are not wages, and that Plaintiffs' Private Attorneys General Act ("PAGA") claim cannot stand for failure to comply with administrative prerequisites.  Lastly, they claimed that Plaintiffs could not recover attorneys' fees for claims based on rest break violations.  On August 31, 2017, this Court denied the motion to dismiss in its entirety. (*Id*. ¶ 4; Order, Dkt. 41.)

Both prior and subsequent to the filing of the complaint, Plaintiffs conducted a diligent investigation of Defendants' wage and hour practices with regard to rest breaks so as to evaluate liability and damages. In addition, Plaintiffs reviewed extensive payroll data which allowed Plaintiffs to calculate the estimated total amount of damages for which Defendants would be liable were Plaintiffs successful in their efforts to certify the class and prevail at trial. (Renick Decl. ¶ 6.)

On April 19, 2018, the parties participated in mediation with Barry Winograd in Oakland, California, and were able to reach a settlement of all claims.  The settlement was ultimately reduced to a written Joint Stipulation of Class Action Settlement and Release (the "Settlement Agreement"), which has been executed by all parties. (*Id*. ¶ 5.)

### B.    Pertinent Factual Background

Each Defendant owns and/or operates one of the following facilities in California: (a) a fuel distribution facility in Carson (the "Carson Terminal facility"), (b) a refinery in Martinez, California (the "Martinez Refinery"), and (c) two catalyst production facilities in Martinez and Pittsburg,

3

PLTIFFS' MOTION FOR FINAL APPROVAL OF SETTLMNT AGRMNT AND PLAN OF ALLOC;
MEMO OF POINTS AND AUTHORITIES IN SUPP THEREOF/Case No. 17-cv-00282-MMC

California ("Criterion Catalyst plants") (individually and collectively, the "worksites").  Because the processes conducted at the worksites require constant monitoring, Operators work a continuous rotating shift. Plaintiffs contend that during their shifts, they are never fully relieved from duty.  The processes carried out at the worksites are dangerous operations that involve hazardous substances and have the potential for catastrophic consequences. Employees at the worksites who work a "rotating shift schedule," meaning they are paid for all hours worked on their shift, are referred to as "shift workers" or "shift employees." (Renick Decl. ¶ 8.)

At each worksite, there are two types of Operators: Console (also known as "Board" or "Inside") Operators and Field (or "Outside") Operators.  (*Id*. ¶ 9.) Console Operators sit at control boards, called "consoles," inside a control facility and monitor and make adjustments to the levels, pressures, temperatures, and other indicators on equipment, products, and processes in their units to ensure that the units are operating properly.  Outside Operators work outside in the units and in satellite operating shelters, and they are responsible for maintaining, monitoring, inspecting, and making adjustments to equipment at the direction of Console Operators and supervisors.  To keep the refineries operating continuously, each unit has four crews of Operators who rotate between day and night shifts. Every crew on every shift must have certain minimum "crew positions" filled by an Operator at all times. (*Id*.)

Plaintiffs additionally allege that Operators remain responsible for their units throughout their shifts.  Plaintiffs allege that throughout their shifts, Defendants require Plaintiffs and the other Operators to monitor the refining process, respond to upsets and critical events, and maintain the safe and stable operation of their units. In order to do so, Plaintiffs and the other Operators are required to remain attentive, carry radios, and be reachable at all times during their shifts.  Plaintiffs are also required to remain in contact with supervisors and other employees working in their unit throughout their shifts.  As a result, Plaintiffs allege that they never receive off-duty breaks because they are constantly and continuously responsible for their units. (*Id*. ¶ 10.)

Plaintiffs ground their claim in part on the California Supreme Court's December 22, 2016 decision in *Augustus v. ABM Securities Services, Inc.*, 2 Cal. 5th 257, 260 (2016) ("*Augustus*"), which held, *inter alia*, that rest periods under Industrial Welfare Commission ("IWC") Wage Order No. 4-

4

1   2001 cannot be "on call."  Plaintiffs have contended that this interpretation applies to IWC Wage

2   Order No. 1-2001, which is the applicable wage order here.

3       **C.   Discovery and Investigation Conducted by Plaintiffs**

4       Plaintiffs conducted an extensive investigation of Defendants' wage and hour practices at their

5   four California locations, particularly in regard to the provision of rest breaks.  Plaintiffs interviewed

6   Operators at each of the locations, and reviewed thousands of pages of relevant written materials,

7   including employee handbooks, training materials, and emergency protocol materials.  In addition,

8   Defendants provided, and Plaintiffs reviewed, Defendants' payroll data containing all of the shifts

9   worked by each class member during the class period and the specific pay rate that applied to each of

10  those shifts.  Based on this extensive investigation and review of discovered materials, Plaintiffs were

11  able to thoroughly evaluate liability and determine estimated damages. (*Id*. ¶ 6.) Plaintiffs' due

12  diligence provided a sufficient basis upon which to obtain an excellent settlement on behalf of the

13  class.

14  **III.   ARGUMENT**

15      **A.   The Court-Approved Notice Plan Was Fully Implemented and Satisfies Rule 23
            Requirements.**

16      Rule 23 requires for class action settlements that a court direct notice in a "reasonable manner

17  to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(2).  Rule 23 further

18  requires that the notice be "the best notice that is practicable under the circumstances, including

19  individual notice to all members who can be identified through reasonable effort," and that the notice

20  state the nature of the action, the class definition, the class claims, issues, or defenses, the right to

21  individual legal representation, the right to request exclusion, and the binding effect of a judgment

22  under Rule 23(c)(3).  Fed R. Civ. P. 23(c)(2).  The notice "must present a fair recital of the subject

23  matter and proposed terms and give[] an opportunity to be heard to all class members." *Marshall v.*

24  *Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977).

25      On September 21, 2018, the Court entered an order preliminarily approving, *inter alia*, the

26  proposed Notice of Class Action Settlement and its distribution. (Order, Dkt. 58; *see* Notice, Dkt. 58-

27  1.) It found that the Notice "fairly and adequately advises the potential class members of the terms of

28

1   the proposed Settlement and the claims process for the class members to obtain the benefits available

2   thereunder, as well as the right of class members to opt out of the class, to challenge the number of

3   shifts reported by Defendants from their records, to file documentation in objection to the proposed

4   Settlement, and to appear at the Final Approval Hearing." (Dkt. 58 at 4.)   It further found that the

5   proposed Notice and distribution "comports with all constitutional requirements, including those of

6   due process." (*Id*. at 4-5.)

7           Pursuant to and in compliance with the Preliminary Approval Order, court-appointed Claims

8   Administrator CAC Services mailed the Notice to the Settlement Class Members. (Johnson Decl.

9   ¶¶ 6.a.-6.d.) The Notice provided to the class included detailed information regarding the following:

10  the nature of the case; the definition of the class; the terms of the Settlement; a class member's rights

11  with respect to participation in the Settlement and the consequences of exercising those rights; the total

12  settlement amount, including the portions of the total settlement amount allocated to PAGA penalties

13  and for payment of service awards, attorneys' fees and costs, and administrative costs; and the specific

14  formula for calculating each member's claim.  (Ex. 1 to Johnson Decl.)  The Notice sent to each class

15  member was also customized to include the estimated amount each Class Member should expect to

16  receive, the total number of Qualifying Shifts worked by that Class Member, and the number of

17  Qualifying Shifts worked during each calendar year of the class period.  (Johnson Decl. ¶ 6.c.; Ex. 1

18  thereto.)  Thus, the information provided in the Notice exceeds that which is required.  *Lane v.*

19  *Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (proper notice "does not require an estimate of the

20  potential value of [the] claims"); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)

21  (The notice is sufficient if it "describes the aggregate amount of the settlement fund and the plan for

22  allocation.").  Indeed, a class notice need only "generally describe[] the terms of the settlement in

23  sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

24  heard."  *Lane*, 696 F.3d at 826 (citation omitted).

25          The Claims Administrator carried out and fully complied with Notice Plan approved by the

26  Court, *see* Dkt. 58 at 4-5.  The Claims Administrator determined from the data provided by Defendants

27  on October 9, 2018, that there were 502 Settlement Class Members, and sent the Notice to those Class

28  Members on October 22, 2018. (Johnson Decl. ¶¶ 6.a.-6.d.)  CAC created a case website,

1    www.shelloilrestbreaksettlement.com and posted a summary of the Settlement, as well as the Notice

2    and Settlement Agreement. (*Id.* at ¶¶ 6.e.-6.f.)  Plaintiffs filed their Motion for Attorneys' Fees and

3    Reimbursement of Costs on November 21, 2018, and the Motion was posted on the case website on

4    November 26, 2018.[2] (*Id.* at ¶ 6.g.)

5          Of the 502 Notices mailed on October 22, 2018.  For one (1), the United States Post Office

6    provided an updated address, and the returned notice was re-mailed to the new address. (Johnson Decl.

7    ¶ 8.)  Five were returned without updated addresses.  The Claims Administrator was able to locate two

8    (2) new address and re-deliver those two. (Johnson Decl. ¶ 9.) Checks will be cut for those three for

9    their share and the Claims Administrator will continue its efforts to locate the three for at least 180

10   days after checks have been cut. (Renick Decl., Ex. 1, at ¶ 88).   Thus, the Notice Plan provided the

11   "best notice that is practicable under the circumstances" as notice was provided to each Class Member

12   who could be identified based on Defendants' records, and only one required re-mailing.

13         Further, the 45-day deadline to object or opt out approved by the Court satisfies the notice

14   requirements of Rule 23 and does not infringe on due process rights. Indeed, the Ninth Circuit has held

15   that mailing the notice 31 days before the deadline for objections is adequate. *Torrisi v. Tucson Elec.*

16   *Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *see also Marshall v. Holiday Magic, Inc.*, 550 F.2d

17   1173, 1178 (9th Cir. 1977) (26 days to opt out after mailing of notice adequate where class members

18   were informed participants).

19         On November 26 and 27, 2018, the Claims Administrator posted to the case website Plaintiffs'

20   Notice and Motion for Attorneys' Fees and Reimbursement of Costs and supporting papers, 14 days

21   prior to the objection/opt-out deadline.  (Johnson Decl. ¶ 6.g.)  This posting was consistent with the

22   Court's order and satisfies the standard for notice set by the Ninth Circuit in *Mercury Interactive Corp.*

23   *Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010), which requires that a motion for

24   attorneys' fees be made available to class members prior to the deadline for objections in order that

25

26        [2] On November 27, 2018, the Court granted the Parties' Stipulation to allow additional time to
     post the fee motion on the case website and to continue the objection deadline to attorney's fees for
27   five days to December 11, 2018 to allow Class Members sufficient time to review the fee motion prior
     to the objection deadline. (*See* Order, Dkt. 63.)  The motion was posted on November 26, 2018,
28   providing Class Members 15 days prior to the deadline to file objections or opt-out. The Notice of
     Extension of Objection to Attorney's Fees was posted on November 27, 2018.  (Johnson Decl. ¶ 6.h.)

7

PLTIFFS' MOTION FOR FINAL APPROVAL OF SETTLMNT AGRMNT AND PLAN OF ALLOC;
MEMO OF POINTS AND AUTHORITIES IN SUPP THEREOF/Case No. 17-cv-00282-MMC

they have a full and fair opportunity to contest the fee sought.

**B.     The Settlement is Fair, Adequate, and Reasonable and Should be Granted Final Approval.**

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Svc. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public interest in settling and quieting litigation" and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). In evaluating a proposed class action settlement, "[t]he universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice*, 688 F.2d at 625 (citations omitted); *accord Torrisi*, 8 F.3d at 1375. "A district court may consider some or all of the following factors when making this determination: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *In re High-Tech Emple. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118051, at *8 (N.D. Cal. Sep. 2, 2015)(*citing Officers for Justice*, 688 F.2d at 625).

The court is entitled to exercise its "sound discretion" when deciding whether to grant final approval. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. "Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *Browne v. Am. Honda Motor Co.*, 2010 U.S. Dist. LEXIS 145475, at *40 (C.D. Cal. July 29, 2010); *accord In re High-Tech Emple. Antitrust Litig.*, 2015 U.S. Dist. LEXIS 118051, at *17. Thus, "'[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

The recovery here is fair, reasonable, and adequate in light of the substantial benefit conferred

8

PLTIFFS' MOTION FOR FINAL APPROVAL OF SETTLMNT AGRMNT AND PLAN OF ALLOC;
MEMO OF POINTS AND AUTHORITIES IN SUPP THEREOF/Case No. 17-cv-00282-MMC

1  on the class members and the risk, expenses, and uncertainty of continued litigation.

### 1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

In evaluating the fairness, reasonableness, and adequacy of the Settlement, the Court should weigh the strength of Plaintiffs' case against the risk and expense of continued litigation. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In determining whether a proposed settlement is reasonable and adequate, "the [trial] judge does not try out or attempt to decide the merits of the controversy," and an appellate court "need not and should not reach any dispositive conclusions on the admittedly unsettled legal issue." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 454 (2d Cir. 1974). Here, while Plaintiffs believe their case against Defendants is strong, the Settlement eliminates significant risks they would face if the action were to proceed against Defendants.

Plaintiffs believe that the California Supreme Court's clarification of the off-duty nature of rest breaks in *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016), provided clear guidance regarding an employer's rest break obligations under California law and confirmed Defendants' failure to provide Shell Operators with lawful rest breaks. Nonetheless, district courts have not consistently interpreted or applied the decision in all circumstances. *See, e.g., Bell v. Home Depot U.S.A., Inc.*, No. 2:12-cv-02499 JAM-CKD, 2017 U.S. Dist. LEXIS 55442, at *5 (E.D. Cal. Apr. 10, 2017) (concluding *Augustus* was not applicable because the court did not consider an on-premises rest break policy which does not require employees to remain on call). In addition, the Ninth Circuit has certified questions to be decided by the California Supreme Court regarding the application of rest- and meal-period regulations to ambulance attendants working twenty-four hour shifts of duty on grounds that *Augustus* did not apply. *See Stewart v. San Luis Ambulance, Inc.*, 878 F.3d 883, 886-87 (9th Cir. 2017).

Moreover, with class claims for violation of rest break and other wage and hour laws, litigation can extend for many years due to the many hurdles facing plaintiffs in class actions. *See, e.g.*, Renick Decl. ¶¶ 34-35 (class actions involving overtime, living wage, and/or meal and rest break violations litigated five years, six years, and more than 10 years before resolving). Further, it was likely that the action would be highly contested and lengthy given the inherently complex nature of class actions and the manner in which a prior wage and hour class action involving similar classes of refinery workers

9

was litigated.  (*Id.* ¶ 34.)  Accordingly, many more years of litigation and an appeal was a very real

possibility here.  Continued litigation against Defendants would inevitably involve significant

additional expenses and protracted legal battles, which are avoided through settlement.  *In re Visa*

*Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003), aff'd 396 F.3d 96 (2d

Cir. 2005) ("The potential for this complex litigation to result in enormous expense, and to continue for

a long time, was great.").  Thus, on balance, these factors weigh in favor of the Settlement.

## 2.    The Amount Offered in Settlement

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are

preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomm. Coop. v.*

*DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  Approval of a class settlement is justified where

"the settlement terms compare favorably to the uncertainties associated with continued litigation

regarding the contested issues in th[e] case."  *Id.* at 526.  A settlement, therefore, need not obtain

100% of the damages and may, in fact, provide only "a fraction of the potential recovery" sought to be

found fair and reasonable.  *Linney*, 151 F.3d at 1242.

The settlement here provides for the payment of $7,750,000.  (Renick Decl. ¶ 13.) The net

settlement to be distributed to the Class after the reduction of the LWDA payment for PAGA

penalties, attorneys' fees, costs, incentive awards, and administration costs is $5,674,440.41. (Johnson

Decl. ¶ 16.) The average payment to the 497 Class Members with Qualifying Shifts is $11,417.39.

(*Id.*) Thus, the financial benefit conferred upon the class is significant.

Additionally, based on Plaintiffs' assessment of damages and the review of timecard and

payroll data encompassing all shifts during the class period, the settlement represents 58% of the

damages incurred during the class period. (Renick Decl. ¶ 29.)

## 3.    The Presence of Governmental Entities

There are no government entities participating in the Settlement.  Plaintiffs, however, provided

a copy of the Settlement Agreement to the California Labor and Workforce Development Agency

("LWDA") in accordance with Labor Code § 2699(l)(2) on August 3, 2018.  (Renick Decl. ¶ 30.)  As

of the filing of this motion, the LWDA has not filed an objection or raised a concern regarding the

Settlement. (*Id.*)  In addition, Defendants provided notice of settlement pursuant to the Class Action

10

1   Fairness Act ("CAFA"), 28 U.S.C. § 1715, to the California CAFA Coordinator at the Office of the

2   Attorney General, Consumer Law Section, and U.S. Attorney General Jeff Sessions on September 21,

3   2018. (Dkt. 59.) Neither attorney general's office has filed an objection or raised a concern regarding

4   the Settlement.  (Renick Decl. ¶ 31.)

5        The absence of any objection or concern raised by a government entity provided notice weighs

6   in favor of the Settlement. [3]

7               **4.        Experience and Views of Counsel**

8        It is Class Counsel's recommendation and belief that the proposed settlement is in the best

9   interests of the Settlement Class. (Renick Decl. ¶ 33.)

10       Great weight is accorded to the recommendation of counsel, who are most closely
         acquainted with the facts of the underlying litigation. This is because parties represented
11       by competent counsel are better positioned than courts to produce a settlement that
         fairly reflects each party's expected outcome in the litigation.
12
    *DirecTV*, 221 F.R.D. at 528 (internal quotations, alterations, and citations omitted).
13
        This Settlement is the product of arms-length, non-collusive negotiations attended by
14
    experienced class counsel.  (Renick Decl. ¶ 28.)  Prior to settlement, a complete investigation of
15
    Defendants' wage and hour practices with regard to rest breaks and an extensive review of time card
16
    and payroll data were conducted to evaluate liability and damages. (Renick Decl. ¶ 6.) Based on their
17
    evaluation and expertise, Class Counsel strongly believe that the settlement is a fair, reasonable, and
18
    adequate resolution of the claims of the Settlement Class and is preferable to continued litigation.[4]
19
    (Renick Decl. ¶ 30; Young Decl. ¶¶ 4-7.)
20
               **5.        The Reaction of the Class Members**
21
        The reaction of the Class Members has been very positive and favors approval of the
22
    Settlement.  Here, the Notice informed Settlement Class Members that Opt-Out Requests were to be
23

24   _____

25       [3] "CAFA presumes that, once put on notice, state or federal officials will raise any concerns
    that they may have during the normal course of the class action settlement procedures." *In re Netflix*
26   *Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 U.S. Dist. LEXIS 37286, at *24 (N.D. Cal. Mar. 18,
    2013).
27
         [4] Class Counsel "represents [the] interests of the class as a whole" and it is Class Counsel's
28   responsibility to "determine whether seeking the court's approval of a settlement would be in the best
    interests of the class as a whole."  Fed. R. Civ. P. 23, cmts. 2003 amdts., ¶ (B)(1).

1    sent to the Claims Administrator, such that they are postmarked on or before December 6, 2018. The

2    Notice also sets forth the information that must be included in each Opt-Out Request. (Ex. 1 to

3    Johnson Decl. at 6.) In addition, the Notice informed Settlement Class Members that Objections were

4    to be filed or mailed to the Court, such that they are postmarked on or before December 6, 2018.  (Ex.

5    1 to Johnson Decl. at 6.) The objection to attorney's fees deadline was continued to December 11,

6    2018. (*See* Order, Dkt. 63.) Only one Class Member has objected to the Settlement, and none have

7    opted out. (Johnson Decl. ¶¶ 11-12.)  Three disputes were submitted, which have been resolved by the

8    Claims Administrator after review of the data provided by the Class Member and Defendants. (*Id.*

9    ¶ 14.)

10           The sole objection to the Settlement was filed by Mr. Kim L. Kevan ("the Objector"). (*See* Dkt.

11   60.) However, "the fact that there is opposition does not necessitate disapproval of the

12   settlement."  *Browne v. Am. Honda Motor Co.*, 2010 U.S. Dist. LEXIS 145475, at *51 (C.D. Cal. July

13   29, 2010 (citation omitted)). "Instead, the court must independently evaluate whether the objections

14   being raised suggest serious reasons why the proposal might be unfair.'" *Id.*  "The Objectors bear the

15   burden of proving any assertions they raise challenging the reasonableness of a class action

16   settlement." *In re Netflix Privacy Litig.*, 2013 U.S. Dist. LEXIS 37286, at *33 (N.D. Cal. Mar. 18,

17   2013) (citing *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990)). Objections amounting to

18   generalized complaints regarding the law and court-approved processes relating to class action

19   settlements are insufficient and should be rejected by the Court.  *See id.* at *37 (rejecting objections to

20   attorneys' fees and incentive awards that "amount to generalized quarrels with the law regarding such

21   fees and awards in class action settlements, the processes used to calculate such fees, and whether the

22   fees and awards are justified in light of Settlement Agreement").

23           Beyond generalized disagreements, the Objector fails to challenge the fairness and

24   reasonableness of the Settlement. First, the Objector voices a general policy disagreement about what

25   he perceives is the purpose of the lawsuit, characterizing it as "continued harassment by Union

26   leaders" that will "cause refineries to shut down and other companies to remove their business from

27   California." (Dkt. 60, at 1.) Not only does this argument lack any factual basis, as the union is not a

28   party to the case, it also in no way addresses the fairness or reasonableness of the Settlement itself. In a

1    similar vein, the Objector suggests that the lawsuit is unfounded because employees "have an option to

2    discontinue their employment if they disagree or find it uncomfortable working in [the] expected

3    environment." (*Id.*) This fact is legally irrelevant and also has no impact on the propriety of the

4    Settlement. Finally, the Objector claims that Defendants "encouraged" compliance with meal and rest

5    break laws. (*Id.*) This individual observation, however, neither refutes Plaintiffs' theory that Operators

6    were not provided with compliant off-duty rest breaks nor negates the overall fairness or

7    reasonableness of the Settlement for all parties.

8          For all of the foregoing reasons, the Settlement should be finally approved because it is fair,

9    reasonable, and adequate, and in the best interests of the Settlement Class Members.

10        **C.**    **The Plan of Allocation Is Fair, Adequate, and Reasonable and Should be Approved.**

11

12          "Approval of a plan for the allocation of a class settlement fund is governed by the same legal

13    standards that are applicable to approval of the settlement: the distribution plan must be 'fair,

14    reasonable, and adequate.'" *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal.

15    2001).  Here, the plan of allocation provides that court-approved attorneys' fees and costs, court-

16    approved service awards, administrative costs, and payment to the LWDA under PAGA are deducted

17    from the Settlement Fund ($7,750,000) to determine the "Net Settlement Proceeds."  Dkt. #55-2, Ex. 1,

18    ¶¶ 49, 53-55, thereto. The Net Settlement Proceeds are then allocated for each member of the

19    Settlement Class. *Id.* at ¶ 54.

20          *Attorneys' Fees*—With respect to awarding attorneys' fees, "courts have an independent

21    obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have

22    already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.

23    2011).  On November 21, 2018, Plaintiffs filed their Motion for Attorneys' Fees and Reimbursement of

24    Costs seeking fees in the amount of $1,937,500 (25% of the settlement) and costs. (Dkt. 61). The

25    motion reflects that the fees and costs requested by Plaintiffs are reasonable and justified based on the

26    relevant factors weighed in determining such awards. (*Id.*) Moreover, the request is void of any

27    evidence of collusion, such as counsel receiving a disproportionate distribution in comparison to the

28    class, a negotiated "clear sailing agreement," or the reversion to Defendants of any unawarded fee

13

PLTIFFS' MOTION FOR FINAL APPROVAL OF SETTLMNT AGRMNT AND PLAN OF ALLOC;
MEMO OF POINTS AND AUTHORITIES IN SUPP THEREOF/Case No. 17-cv-00282-MMC

amount. *See Bluetooth*, 654 F.3d at 947. Here, Plaintiffs seek fees at the Ninth Circuit's 25% of the fund benchmark, Defendants have only agreed not to oppose a reasonable fee request, and the entire settlement amount is non-reversionary. (Renick Decl. ¶¶ 13, 18; *id*., Ex. 1 ("Settlement Agreement"), at ¶¶ 33, 41.)

*Incentive Awards*—As addressed herein, *see infra* Section III.D., Plaintiffs seek an incentive award in the amount of $7,500 for each of the Named Plaintiffs. "The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *28 (N.D. Cal. Apr. 29, 2011) (*citing Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).  Here, the amount sought is reasonable and fair based on the services provided and risks incurred by each during the course of the class action litigation.

*Administrative Costs*—Plaintiffs also request final approval of claims administration costs to be paid to Claims Administrator CAC Services in the amount of $35,587.82. (Johnson Decl. ¶ 17, Ex. 4). The amount requested is fair and reasonable given that the Claims Administrator promptly and properly distributed the Class Notice to Class Members and has performed its duties in accordance with the Settlement terms.  (*See id*. ¶¶ 4-16.)

*PAGA penalties*—The Settlement provides that $50,000 will be allocated to penalties under the Private Attorneys General Act ("PAGA"), with 75% of the PAGA penalties ($37,500) being paid to the California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties ($12,500) being paid to Settlement Class Members who do not opt out.  (Renick Decl. ¶ 17.) This amount is reasonable and adequate given that the possible recovery on the PAGA claim varies tremendously from thousands to a few million dollars, and that there is "a substantial risk of recovering nothing" or very little. *See, e.g., Viceral v. Mistras Group, Inc*. No. 15-cv-02198-EMC, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017), at *3. For instance, in *Viceral v. Mistras Group, Inc.*, the Court granted final approval of a $6,000,000 settlement with a $20,000 allocation for the PAGA claim because plaintiffs faced "a substantial risk of recovering nothing on either the PAGA or class claims." *Id.* The court referred to its prior considerations at preliminary approval, which included that "courts have often exercised discretion to reduce PAGA verdicts below the statutory penalty." *Id.* at *8. This

Court should, therefore, approve the $50,000 allocation for the PAGA claim as adequate and reasonable, especially since the LWDA has filed no objection despite being served with notice of settlement on August 3, 2018. (Renick Decl. ¶ 17.)

*Class Member Payments*—The formula in the Settlement Agreement provides to each Class Member a cash payment which equates to a percentage of the net recovery calculated based upon the number of Qualifying Shifts worked during the class period. (Renick Decl. ¶ 23.)  Specifically, the formula for allocation of the Net Settlement Proceeds among the members of the Settlement Class is as follows: One Credit is given to each continuous shift equal to or greater than 3 ½ hours worked by a member of the class ("Qualifying Shift") during the time period from January 19, 2013 to September 21, 2018.  The value of each Credit ("Credit Value") equals the Net Settlement Proceeds divided by the total number of Credits for all Class Members.  (Renick Decl., Ex. 1, ¶ 55.)  "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 18, 1994). The formula here is reasonable as it relies on a "neutral and uniform metric by which to allocate the Settlement." *See In re High-Tech*, 2015 U.S. Dist. LEXIS 118051, at *23-24 (finding plan of allocation appropriate where formula was based on each Class Member's relative share of base salary, a "neutral and uniform metric" ).

Following the issuance of an order granting final approval of the settlement and plan of allocation, the Claims Administrator will pay from the fund the court-ordered amounts and carry out the distribution of the Net Settlement Proceeds by mailing individual checks to the Settlement Class Members.[5]  If any checks remain uncashed, the Claims Administrator will attempt to locate the impacted Class Member and re-issue checks with an expiration of 180 days. (Renick Decl., Ex. 1, ¶ 88.)  If any Settlement Class Member cannot be located within 180 days, uncashed settlement checks will be awarded *cy pres* to organizations in Northern California that provide job training for the

---

[5] The payment amounts currently allocated to each class member could change depending on the Court's ruling on the pending motion for disclosure of the class member data. (Dkt. 64.) If the motion is granted and if the data shows that some supervisors received more credits than those to which they are entitled, the distribution amounts to class members would be adjusted accordingly. The change to each class member's share would be less than $100. (*See* Renick Decl. ¶ 25.)

PLTIFFS' MOTION FOR FINAL APPROVAL OF SETTLMNT AGRMNT AND PLAN OF ALLOC;
MEMO OF POINTS AND AUTHORITIES IN SUPP THEREOF/Case No. 17-cv-00282-MMC

working poor as selected by Class Counsel. (*Id.*) Centro Laboral de Graton in Graton, California, is a proper *cy pres* awardee because the nexus between the clinics, including a workers' rights trainings, and the California labor laws at issue in this case is sufficiently direct. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (a *cy pres* award should be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class).  For all of the reasons set forth herein and the accompanying declarations, the plan of allocation is fair, reasonable, and should be approved.

**D.    The Court Should Grant Plaintiffs' Request for Incentive Awards for the Six Named Plaintiffs.**

The requested incentive awards in the amount of $7,500 for each of the Named Plaintiffs is consistent with a fair, just and adequate settlement.[6]  "Courts routinely approve incentive awards to compensate named Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000); *see also Staton*, 327 F.3d at 977 (9th Cir. 2003) (reasonable incentive payments are appropriate for named plaintiffs); *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an incentive award in such amount "as may be necessary to induce [the class representative] to participate in the suit" is appropriate).  Plaintiffs' incentive award request is based upon (1) the actions taken by the Named Plaintiffs to protect the interests of the class and the degree to which the class has benefitted from those actions; (2) the time and effort the Named Plaintiffs expended in pursuing the litigation; (3) the risk each undertook in commencing suit; and (4) the proportion of the payments relative to the settlement amount and the average settlement amount. *Staton*, 327 F.3d at 977; *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667, at *94 (N.D. Cal. Apr. 1, 2011).

The class has greatly benefited from the Named Plaintiffs' assistance in the litigation.  The Named Plaintiffs ensured a fair settlement of the case by securing and providing class counsel the information necessary to file the complaint, assisting class counsel in preparation for mediation,

---

[6] The incentive award is in addition to the Named Plaintiffs' Class Member share of the settlement.

engaging in settlement negotiations, communicating regularly with class counsel, and, after a settlement was reached, discussing the settlement terms with members of the putative class. (Berlanga Decl. ¶¶ 3-9, 11; Ehresman Decl. ¶¶ 3-8; 10; Gaeth Decl. ¶¶ 3-8, 10; Gonzalez Decl. ¶¶ 3-8, 10; Langlitz Decl. ¶¶ 3-8, 10; Palacio Decl. ¶¶ 3-8, 10.)  *See Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 268 (N.D. Cal. 2015) (awarding $15,000 for the plaintiff's time spent securing and speaking with counsel, reviewing documents, assisting counsel in preparing for mediation, traveling to the mediation session, and engaging in settlement negotiations and for the risks associated with initiating the litigation); *see also Chu v. Wells Fargo Invs*., LLC, No. C 05-4526 MHP, 2011 U.S. Dist. LEXIS 15821, at *14 (N.D. Cal. Feb. 15, 2011) (awarding $10,000 to each named plaintiff because they adequately demonstrated they assisted in the preparation and settlement of the litigation notwithstanding some risk of professional harm due to their public participation). Recently, Judge Gonzalez Rogers approved incentive awards in the amount of $7,500 to each of the named plaintiffs in a similar rest break case filed by Hadsell Stormer & Renick and Gilbert & Sackman against Phillips 66 Company. *See Buzas v. Phillips 66 Company*, No. 4:17-cv-00163-YGR (N.D. Cal.), Dkt. 47, Mar. 6, 2018.

When a class representative shoulders some degree of personal risk in joining the litigation, such as workplace retaliation or financial liability, an incentive award is especially important.  *Staton*, 327 F.3d 977; *see also Bellinghausen,* 306 F.R.D. at 267 (finding incentive awards particularly appropriate in wage-and-hour actions because plaintiffs undertake a significant "reputational risk" by bringing suit against their employers).  Here, each of the Named Plaintiffs took the risk that future employment, whether it was with Defendants or another refinery, would be jeopardized.  (Berlanga Decl. ¶ 10; Ehresman Decl. ¶ 9; Gaeth Decl. ¶ 9; Gonzalez Decl. ¶ 9; Langlitz Decl. ¶ 9; Palacio Decl. ¶ 10.)  They took this risk while others chose not to, and they took the risk to benefit the other class members.

The size of the incentive awards – $7,500 to each of the six named Plaintiffs – is consistent with the range of incentive awards approved by other federal courts in class action cases, including courts of this District. *See Bellinghausen*, 306 F.R.D. at 268 (awarding $15,000 service award); *Lemus v. H&R Block Enters. LLC*, 2012 U.S. Dist. LEXIS 119026, at *21 (N.D. Cal. Aug. 22, 2012)

1  (approving $15,000 service awards); *Chu,* No. C 05-4526 MHP, 2011 U.S. Dist. LEXIS 15821, at *14

2  (finding $10,000 in line with other incentive awards in this Circuit); *Spalding v. City of Oakland*, No.

3  11-cv-02867 TEH, Dkt. No. 99 (N.D. Cal. Sept. 9, 2013) (approving $9,000 incentive award); *Covillo*

4  *v. Specialty's Café,* No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, at *28-29 (N.D. Cal. Mar.

5  6, 2014) (approving an $8,000 incentive award for each of the three named plaintiffs).

6      The incentive awards here are also proportionate to the monetary relief provided by the

7  Settlement Agreement. The proposed $7,500 awards are $3,782.87 more than the average class

8  member award of $11,282.87.  Courts have consistently approved incentive awards that were far

9  higher in comparison to individual awards.  *See Lemus*, 2012 U.S. Dist. LEXIS 119026, at *2

10  (approving $15,000 service awards where the average class recovery was about $1,200); *In re Capital*

11  *One Tel. Consumer Prot. Act Litig.*, 2015 U.S. Dist. LEXIS 17120, at *7 (N.D. Ill. Feb. 12, 2015)

12  (approving $5,000 service awards where class members who made timely claims were entitled to "at

13  least $39.66"). Moreover, Named Plaintiffs agreed to a general release of all claims they might have

14  against Defendants, and agreed not to oppose any future attempt by Defendants to obtain renewal of

15  the DLSE rest break exemption, thereby giving up additional rights. (Renick Decl. ¶ 16.)

16      Finally, the incentive awards, totaling $45,000, are less than 1% of the gross settlement. This

17  percentage is in line with those found to be acceptable in other class actions. *See In re Mego Fin.*

18  *Corp. Sec. Litig.,* 213 F.3d at 463 (approving incentive award of $5,000 to two plaintiff representatives

19  in $1.75 million settlement, comprising 0.56% of the total settlement amount); *Sandoval v. Tharaldson*

20  *Employee Mgmt, Inc.*, 2010 U.S. Dist. LEXIS 69799, at *26-27 (awarding $7,5000 incentive payment

21  to named plaintiff, comprising 1% of gross settlement amount); *Hopson* v. *Hanesbrand Inc*., No. CV-

22  08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *28-29 (N.D. Cal. Apr. 3, 2009) (approving $5,000

23  incentive award to one named plaintiff, comprising 1.25% of the settlement amount).

24      **E.**    **Final Certification of the Class for Settlement Purposes Is Proper.**

25      The Court should reaffirm its finding at preliminary approval that certification of the class for

26  settlement is proper under Rule 23(b)(3), *see* Dkt. 58. A district court must give "'undiluted, even

27  heightened, attention in the settlement context' to scrutinize proposed settlement classes." *In re*

28  *Hyundai & Kia Fuel Econ. Litig.*, Nos. 15-56014, 15-56025, 15-56059, 15-56061, 15-56064, 15-

18

PLTIFFS' MOTION FOR FINAL APPROVAL OF SETTLMNT AGRMNT AND PLAN OF ALLOC;
MEMO OF POINTS AND AUTHORITIES IN SUPP THEREOF/Case No. 17-cv-00282-MMC

56067, 2018 U.S. App. LEXIS 1626, at *36 (9th Cir. Jan. 23, 2018) (citation omitted).  While "it need not consider litigation management issues in determining whether to certify a class," a court must properly conduct the Rule 23(b)(3) predominance inquiry focused on whether common questions outweigh individual questions. *Id.* at *35-36. Here, the numerosity, commonality, typicality, and adequacy of representation prerequisites under Rule 23(a) are met, and common questions of law and fact predominate under Rule 23(b)(3).

### 1. The Settlement Class Satisfies the Rule 23(a) Requirements

*Numerosity*—Based on the Claims Administrator's review of the data from Defendants, the Settlement Class includes 502 members. (Johnson Decl. ¶ 6.a.)  The proposed class is, therefore, so large that joinder is not practicable and disposition of their claims as a class will benefit the parties and the Court.  *See Slaven v. BP America, Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000) ("As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members. . . .").

*Commonality*—To show commonality, a plaintiff "must demonstrate that there are questions of fact and law that are common to the class."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(2)).  "The requirements of Rule 23(a)(2) have been construed permissively, and all questions of fact and law need not be common to satisfy the rule."  *Id.* at 981. Here, Plaintiffs assert that there are common questions of fact and law arising from the putative class members' employment, including whether Defendants failed to authorize and permit class members to take rest periods in accordance with applicable California law because it failed to relieve class members of all work duties during their rest periods.

*Typicality*—"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The claims alleged by the Named Plaintiffs arise out of the challenged practices and common course of conduct by Defendants and are based on the same legal theories as the claims of the putative class members; thus, they are typical of those claims which could be alleged by any member of the proposed class.  Further, the relief sought by Named Plaintiffs is typical of the relief which would be sought by each member of the proposed class if they were to file separate actions.

19

*Adequacy of Representation*—To determine whether named plaintiffs will adequately represent a class, courts look to (a) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (b) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 462 (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Here, Named Plaintiffs are proper representatives of the proposed class because they can and will fairly and adequately represent and protect the interests of all putative class members as neither the Named Plaintiffs nor their counsel have any apparent conflicts of interest with the absent members of the Settlement Class and their claims arise out of the same set of facts as those of the Settlement Class. The Named Plaintiffs have been committed to the vigorous prosecution of this case and have reached a resolution they believe is in the best interests of the Settlement Class. (Renick Decl. ¶ 13.) Moreover, Plaintiffs' counsel, Hadsell Stormer & Renick, LLP and Gilbert & Sackman, A Law Corporation, are highly experienced class counsel, having handled dozens of similar wage and hour class actions, as well as other types of class and complex litigation. (Renick Decl. ¶¶ 33-28; Young Decl. ¶¶ 4-7.)

### 2. The Settlement Class Meets the Requirements of Rule 23(b)

Pursuant to Rule 23(b)(3), class adjudication is proper if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Sandoval v. Roadlink United States Pac., Inc.*, No. EDCV 10-00973 VAP(DTBx), 2011 U.S. Dist. LEXIS 130378, at *2 (C.D. Cal. Oct. 9, 2011).

*Predominance of common issues*—"Common issues predominate over individual issues when the common issues represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Edwards v. The First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015).

Under California law, an employer is required to authorize and permit all employees to take duty free rest periods of 10 minutes per four hours of work or major fraction thereof. Wage Order 1-2001 §12(A); *see Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1032 (2012). During rest periods, "employers must relieve employees of all duties and relinquish control over how

20

employees spend their time." *Augustus*, 2 Cal. 5th at 269.  In *Augustus*, the California Supreme Court

held that "an employer cannot satisfy these obligations under Wage Order 4, subdivision 12(A) while

requiring the employees to remain on call." *Id.* at 270.  Plaintiffs' primary claim in this case is that

Defendants' lack of a rest break policy or practice which authorizes and permits duty-free rest breaks

and its uniform failure to provide such breaks violate California law.  This issue is suitable for class

adjudication because it pertains to all members of the class.  *See Bradley v. Networkers Int'l, LLC*, 211

Cal. App. 4th 1129, 1150 (2012) ("The lack of a meal/rest break policy and the uniform failure to

authorize such breaks are matters of common proof.").  Plaintiffs assert that Defendants' defense, that

it permitted employees duty free rest periods, is also common to the class. *See Lubin v. Wackenhut

Corp.*, 5 Cal. App. 5th 926, 957 (2016) (The employer's "defense that it had a policy or practice

authorizing rest breaks is susceptible to classwide resolution.").  Common issues, therefore,

predominate over any individual issues.

     *Superiority*—"The superiority inquiry under Rule 23(b)(3) requires determination of whether

the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*,

150 F.3d at 1023.  "This determination necessarily involves a comparative evaluation of alternative

mechanisms of dispute resolution." *Id.* at 1023.  Here, class resolution is superior to other available

methods for the fair and efficient adjudication of the controversy, particularly in the settlement context.

Plaintiffs assert that the prosecution of separate actions by individual members of the proposed class

would create a risk of inconsistent and/or varying adjudications with respect to the individual members

of the class, establishing incompatible standards of conduct for Defendants, and resulting in the

impairment of putative class members' rights and the disposition of their interests through actions to

which they are not parties.  The prosecution of separate actions and individualized litigation would also

increase the delay and expense to all parties and the court system.  Finally, compared with other

methods such as intervention or the consolidation of individual actions, a class action is fairer and

more efficient.

/ / /

/ / /

/ / /

1

## IV.    <u>CONCLUSION</u>

2

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting

3

Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and enter Judgment.

4

DATED:  January 4, 2019                Respectfully submitted,

5

HADSELL STORMER & RENICK, LLP

6

GILBERT & SACKMAN, A LAW CORPORATION

7

8

*/s/ Randy Renick*

9

Randy Renick

10

Attorneys for Plaintiffs David Berlanga, Brandon
Ehresman, Charles Gaeth, Michael Gonzalez, John
Langlitz, and Christopher Palacio

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTIFFS' MOTION FOR FINAL APPROVAL OF SETTLMNT AGRMNT AND PLAN OF ALLOC;
MEMO OF POINTS AND AUTHORITIES IN SUPP THEREOF/Case No. 17-cv-00282-MMC